## JOHNSON v. CUNNINGHAM.

1. It is permissible to show by *oral evidence* that a person ·was in *possession* of land; but the *title* cannot be proved by *reputation*.

2. Where a party proposes to prove several facts, some of which are admissible and others not, the Court is not bound to distinguish between them, but may over rule the entire proposition.

3. A naked trust will not exclude a man from giving evidence ; consequently, when a trustee has done no act which affirms the fairness and validity of the deed of trust, he may be examined to show it fraudulent.

4. The mere possibility that a trustee, while acting as such, may have subjected himself to liability for a breach of trust, and may, therefore, be interested to defeat the deed, will not make him an incompetent witness—the interest is too remote and uncertain.

5. Where a recovery is had against a sheriff, upon a suggestion that he had failed to collect an execution, by reason of the want of due diligence, he cannot reimburse himself by a suit against the defendant in execution. Therefore, a person having a lien by deed of trust, upon the land of the defendant in execution, upon the trial of the suggestion, may be examined, to show that it was subject to the execution—his evidence, instead of being in favor of, would be adverse to his interest; inasmuch as a verdict would not relieve the land from a liability to satisfy the plaintiff's judgment.

6. If a witness can testify to the payment of money *from his own · knowledge of the fact,* the production of a receipt in writing (though one exist) is not necessary.

7. An attorney with a mere naked power, cannot delegate his authority to another. But where it is indispensable by law, in order to accomplish the end ; or it is the ordinary course of trade ; or it is understood by the parties to be the mode by which the particular business would, or might be done, the authority to appoint an attorney may be implied.

8. An attorney at law, in virtue of his *ordinary powers,* cannot delegate his authority to another, so as to raise a privity between such third person and his principal, or to confer on him as to the principal, his own rights, duties and obligations.

9. Where the grantor in a deed of trust, executed for the purpose of securing the *cestui que trust* against contingent liabilities, stipulated in the deed, that the grantor should retain the possession of the property conveyed, until a liability was incurred ; the retention of possession, is no evidence of fraud.

10. Where it is stipulated in a deed of trust, that the money unappropriated, and property undisposed of, after satisfying the purposes of the deed, should be paid

32

over and revert to the grantor, the deed is not thereby made void ; for the gran-tor stipulates for nothing more than what the law would have given him.

THIS was a proceeding against the defendant, as the sheriff of St. Clair. The plaintiff suggested to the circuit court of that county, that an execution issued on a judgment of that court, in his favor, for the sum of two hundred and eighty dollars and sixty-two cents, besides interest and cost, was placed in the defendant's hands to make the money thereon, by a levy on, and sale of, the goods and chattels, lands and tenements, of Robert Lawson. That with due diligence he could have collected the money on the execution, but by the want of diligence, he had failed to collect the same. Notice of the suggestion having been served on the defendant, it was submitted to a jury to inquire into the alleged default.

On the trial, a bill of exceptions was sealed, by the presiding judge, which embodies much, if not all the testimony in the case, but as the assignments of error refer only to parts, and not the entire bill, we deem it proper to state only so much as may be necessary to a correct understanding of the questions of law here examined.

The plaintiff read to the jury, without objection, the execution described in his suggestion, and also an execution issuing from the same court in favor of King & Johnson against Robert Lawson, both of which, it appeared from endorsement thereon, were in the defendant's hands as sheriff of St. Clair, at the same time, and were returned, each, as follows—"no goods or chattels of defendant's found in my county, whereof the sum mentioned in this *fi. fa.* could be made, or any part thereof ; 22nd March, 1836." The plaintiff then offered to prove that the defendant in the execution read, was in the possession, and reputed the owner of the nineteenth section of land, in township eighteen, range three, east, (situate in the county of St. Clair,) at the time the sheriff had the execution in his hands, which evidence being rejected, the plaintiff excepted.

It was in proof that the defendant in the executions had, previous to the recovery of judgment against him, conveyed to

Jno. F. Dill, *in trust,* the nineteenth section, in township eighteen, and range three, east, above referred to, together with other property, to secure to Joel Chandler, the amount of a promissory note, made payable to him by the grantor, and to endemnify Chandler and one Philip Coleman, against the consequences of liabilities incurred, and likely to be incurred by them, as his sureties. The plaintiff, by his counsel, then introduced Dill, to prove that, as trustee, he had, at the instance of Chandler, advertised the trust property twelve months before the sale —that previous to the sale, he had been removed by order of court, and had no other agency in the execution of the trust. The plaintiff's counsel, also proposed to prove by the same witness, that, at and before the execution of the deed of trust, facts and circumstances existed, tending to show that the same was fraudulent, which the court ruled to be inadmissible, inasmuch as the witness had been the trustee in the deed, but held that the witness might testify as to any matter unconnected with the creation of the deed. Whereupon the plaintiff excepted, etc.

The defendant's counsel then introduced Joel Chandler, one of the *cestuis que trust* in the *deed,* from Lawson to Dill, and proved by him, that he (the witness) had paid a large amount of money, in consequence of his suretyship, as therein provided for. To the admission of this testimony, the plaintiff objected, but his objection was overruled by the court, and he thereupon excepted. The witness further stated, that Lawson had, at one time, paid him fourteen hundred dollars, that he (the witness) had paid all the demands mentioned in the deed, after judgment, and had taken receipts of the plaintiff's attorney's and other officers of court : whereupon the plaintiff again objected to the testimony of the witness, and the court ruled that he could not testify as to monies paid where receipts had been taken, without their production. To which the plaintiff excepted, etc.

It was in proof, from the endorsement of the defendant, (as sheriff) on the *execution,* that it was levied on the section of land above described. As an excuse for the omission to sell under the levy, the defendant introduced a witness, who deposed that William H. Estill, was the agent of the plaintiff's attorney,

and as such, had agreed to postpone the sale and to give the defendant an indemnifying bond, at or before the next sale day. At which time John Doer, the plaintiff's agent, applied in that character, and requested him to sell the land levied on, but the defendant refused to sell unless he was indemnified ; which the agent refused to do.

The plaintiff then moved the court to instruct the jury that, *no agreement made with the agent of the plaintiff's attorney,* was obligatory on him, and that if such an agreement was made by Estill with the defendant, it was *nudum pactum* and the sheriff had no right to demand an indemnifying bond before he would sell the land of Lawson under the levy. Which instruction the court refused to give ; but charged the jury, that although the law did not allow the sheriff to require an indemnifying bond, yet if Estill had made an agreement within the scope of his authority as agent with the defendant to give such a bond, and there was a failure to comply, the defendant might have regarded it as an abandonment of his intention to sell, until the sheriff should be notified of the determination of the plaintiff to insist upon a sale without a bond being first executed.

The court was also asked to instruct the jury that, the retention of the possession, and use of the property conveyed in the deed of trust, for an indefinite period, and the length of time stipulated for the advertisement of the time and place of sale, were badges of fraud. Whereupon the court charged the jury, that they might consider these circumstances as evidence of fraud, and that they should find for the plaintiff, unless from the entire testimony in the cause they were satisfied of the fairness of the transaction—but they should look to all the facts and circumstances from which fraud might or might not, be intended, and not to the particular objections taken by the plaintiff.

Further :—the plaintiff moved the court to instruct the jury, that inasmuch as Lawson had reserved to himself a maintenance or other interest in the property conveyed, the deed was void, *per se* ; which instruction was refused by the court. The plaintiff thereupon excepted to the several instructions given, as well

as those refused, and a judgment being rendered upon verdict against him, the plaintiff has prosecuted a writ of error to this court.

BAYLOR, for the plaintiff.
McCLUNG, for the defendant.

COLLIER, C. J.—The plaintiff insists that the judgment of the circuit court is erroneous. *First*—Because that court refused to permit John F. Dill, a witness introduced by him, (the plaintiff) to testify as to the several matters, which it was proposed to prove by him. *Second*—Because Joel Chandler, a witness for the defendant, was permitted to depose in a manner, and to facts wholly inadmissible. *Third*—Because the court refused to charge the jury that the agreement made by the agent of the plaintiff's attorney, with the defendant, was void. *Fourth*—Because the court erred in the several instructions given, as well as in refusing those asked.

*First*—In the case of Rhea, Conner & Co. v. Hughes, at the present term, it was held that the occupancy of land, merely by the permission of the proprietor, where the occupant could not be regarded as having any interest in, or right to the same, did not subject the possession to levy and sale for the payment of the debts of the latter. In that case, the occupant was in possession of a portion of the public lands, by the tacit acquiescence of the federal government, and the question was, whether he had such an interest as could be sold under legal process. The court determined that he had not ; but cite without disapprobation, Jackson v. Parker, (9 Cow. Rep. 73,) in which it was adjudged, that possession is an interest in land, which is bound by a judgment and may be sold under execution. That possession is such an interest in land as may be sold under execution, as a general principle, seems to us to rest upon the soundest reasoning. The intendment from the fact of possession is, that the occupant has an interest of some value, and if the intendment is unauthorized in point of fact, it devolves upon him who maintains the negative, to show the true state of the facts. In the case at bar, it

was not attempted on the part of the defendant, to introduce evidence explanatory of the character of Lawson's possession; and the testimony of Dill, if confined to the fact of possession would have been clearly admissible. But the proposition of the plaintiff to the circuit court, was not merely to prove Lawson's possession by that witness, but also to show by *reputation,* that he was the owner of the land. This was not permissible; title to real estate in this country, exists not in the memory of witnesses alone, but is evidenced by writing, which must be produced, or the necessary foundation laid, before parol evidence of its contents, can be received. Here no foundation was laid for the introduction of secondary proof,—no effort seems to have been made to obtain title papers, and there is no pretence that they were lost. It then follows that the court rightfully rejected the testimony of Dill, so far as it related to the title of Lawson to the land. It has been repeatedly adjudged by this court, that where a party proposes at the same instant of time to prove several facts, some of which are admissible, and some are not, the court is not bound to distinguish between them, but may overrule the entire proposition. The bill of exceptions in the present case, shows an offer to prove as we have seen, two distinct matters, viz: the possession of Lawson, and his title—the first of which was admissible, yet being conjoined with the second, which was not, the refusal of the court to receive the testimony, is no ground of error.

But the circuit court refused to allow Dill to give evidence tending to show that a deed executed by Lawson to the witness, (of the land levied on,) *in trust,* for Chandler and Coleman, was fraudulent, unless the disclosure of the witness, should relate to matters wholly unconnected with the creation of the deed.

This decision, by which the testimony of Dill was excluded, must have been founded on one of three grounds, viz:—1. on the confidental relationship, which existed between Dill as trustee, Lawson as grantor, and Chandler and Coleman as *cestuis que trust.* 2. Because the witness was a party in the creation of the deed; or 3. Because he may have been interested in avoid-

ing the deed, as he would, thereby, relieve himself from all liability for a breach of trust.

1. The first ground is not well founded in law : confidential communications between an attorney, solicitor, or counsel and a client, or one who advises with either of them, upon professional business, are not to be revealed at any period of time. But this privilege does not apply to the cases mentioned, where the attorney, solicitor, or counsel, knew the fact sought to be elicited before he was addressed in his professional character ; or where he has made himself a party to the transaction ; or where he is questioned to a collateral fact, within his own knowledge, or to a fact which he might have known, without being entrusted as attorney in the cause. But it is needless to consider exceptions to the rule we have stated, since the rule itself, can have no application in the present case. (See Wilson v. Rostall, 4 T. R. 759,) in which *Mr. Justice Buller* limits it to attorneys, solicitors and counsel, and regrets that it had not been extended to medical gentlemen, (Peake, N. P. C. 77.)

2. It has been held, that a party cannot be heard to avoid a *deed ab initio*, by which he has granted and conveyed, or professes to grant or convey property. The operative words of the deed imply a warranty, and a covenant for quiet enjoyment, on the part of the grantor, and therefore, he cannot be examined as a witness, to overturn and invalidate the title granted by the deed: (Marr v. Ward; 2 Atk. Rep. 228: 2 Bla. Com. 295: Plowd. Rep. 434: 1 Co. Rep. 176: 8 Co. Rep. 158. But this principle is not applicable to a mere trustee, who does not undertake to convey, but receives a legal title from the grantor, that he may execute the trust created by the deed. It is not in general, indispensible to the right of the trustee to act, that he should join in the deed. If he were to assume the execution of the trust, he would be liable for a breach of duty, to the same extent, as if he had executed the deed. It is however, usual, and the better course, for the trustee, to join in the deed, as written proof is thus afforded, of the extent of his undertaking; but the bare fact of his doing so does not estop him, in a case in which

he has no interest, from giving evidence of facts, either to sustain, or defeat the deed. A naked trust, shall not exclude a man from being a witness. (Willis on Trustees 227; and cases cited: 10 Law. Lib.) If he were a party to the suit at law, the law would be otherwise; but in equity, he might even then be examined as a witness by leave of the court, which is granted in such cases, as a matter of course. (See Man v. Ward, 2 Atk. Rep. 228.) In the case before us, the trustee did no act, which affirmed the fairness and validity of the deed from Lawson to himself, and consequently is not precluded from showing it to be fraudulent.

3. In order to disqualify a witness on the ground of interest, it must appear that he had a legal and fixed interest. (Stockham v. Jones and others; 10 Johns. Rep. 21.) To show a witness interested, it is necessary to prove, that he must derive a certain benefit from the determination of the cause, one way or the other. A remote or contingent interest, affects his credit only. (Falls & Smith v. Belknap; 1 Johns. Rep. 491: Peterson v. Willing, *et al.;* 3 Dall. Rep. 508: Phelps v. Hall; 2 Tyler's Rep. 399.) In Carter v. Pearce, (1 Term. Rep. 163,) it was held that the bare possibility of an action being brought against the witness is no objection to his competency. To the same effect, is Stewart v. Kip. [5 Johns. Rep. 256.] And Phillips, in his treatise on evidence, [1 vol. 40] remarks, "it may be laid down as a general rule, that executors in trust, trustees, and agents, are not incompetent, merely on the ground of their liability to action." See, also Goss v. Tracy [1 P. Wm's. Rep. 287:] Goodtitle v. Fowler [1 Doug. Rep. 140:] Betterson v. Bromley [12 East. Rep. 250 ] From this view, it results, that the possibility that Dill may, while acting as a trustee, have subjected himself to liability for a breach of trust, and may, therefore, be interested to defeat the deed, will not make him an incompetent witness. The interest is too remote, and uncertain.

Neither of the grounds then, which we suppose to have i. fluenced the Circuit Court in rejecting the testimony of Dil', sustain its decision, and consequently, it is erroneous.

We are aware that the case of Wilson v. Wilson, [1 Dess. Rep. 230.] is adverse to the conclusion we have attained; but our best reflections satisfy us, that, that case is not defensible in principle; and examination has shown us, that it is not sustained by the authorities cited to support it.

*Second:* Chandler was certainly a competent witness for the defendant, to show that Lawson had no title to the land levied on: he could not be prejudiced, or benefitted, by any verdict the jury might have rendered. If the plaintiff fail to recover of the defendant, he may, notwithstanding, subject the land to his execution, if the transfer by Lawson was fraudulent. And if the defendant be charged with the payment of the plaintiff's execution, he cannot reimburse himself by a sale of the land; for, by a recovery against him, the judgment will be satisfied; and no execution can issue thereupon, at his instance: Nor could he recover in an action for *money paid, laid out, and expended;* the circumstances under which his liability as sheriff would be incurred, and the payment made, not being such, as to imply a promise of re-payment. [2 Starkie 92–'3–'9: Weakley v. Brahan & Atwood; 2 Stewart's Rep. 500 )

In the bill of exceptions it is stated, that the court ruled, that Chandler could not testify as to moneys paid, where receipts had been taken, without producing them; but that it was not necessary to produce the judgments he had satisfied. Whereupon, the judgments in favor of Barr, Auchincloss & Co. and Parkman, were shown, together with the attorneys receipts for the same, amounting to one thousand four hundred and thirty and eighty-eight hundredth dollars; to which opinion of the Court, the plaintiff excepted. If a witness can testify to the payment of money *from his own knowledge of the fact*, the production of a receipt, has been held not to be necessary: (Adm'rs of Wiggins v. Adm'rs of Pryor; 3 Porter's Rep. 430.) It is needless to inquire whether the Court erred in determining it was not necessary to produce the judgment, inasmuch, as the defendant did not avail himself of the decision, but brought the judgment into court as evidence.

*Third:* One who has a bare authority from another, to do an act, must execute it himself, and cannot delegate his authority to another; for being a confidence, or trust, reposed in him personally, it cannot be assigned to a stranger, whose ability and integrity might not be known to the principal: or, if known, might not be selected by him, for such a purpose. But there are cases in which the authority may be implied; as where it is indispensable, by law, in order to accomplish the end; or it is the ordinary custom of trade; or it is understood by the parties to be the mode in which the particular business would, or might be done. (Story on Agency, 14, 16.) Taking the law to be as we have stated, and it follows, that an attorney at law, in virtue of his *ordinary powers,* cannot delegate his authority to another, so as to raise a privity between such third person, and his principal; or to confer on him, as to the principal, his own rights, duties and obligations. And if there was any thing in the nature of the employment, from which a delegation of authority might be implied; or to show that it was contemplated by the parties, it should have been shown by proof. In the absence of such evidence, it is clear, that the agreement of the agent of the plaintiff's attorney, could not bind the plaintiff: and the court should have instructed the jury that it was void.

*Fourth:* In refusing the instructions asked, and in giving those excepted to, we are of opinion that there is no error. The retention by Lawson, of the possession of the property conveyed by the deed to Dill, was not the slightest evidence of fraud. It was, in fact, stipulated by the deed, and was entirely in harmony with its terms. At the time the deed was executed, the note of Lawson to Chandler, had not become due, and the *cestui's que trust,* had not been required to pay for Lawson, any thing on account of their suretyship; and it was entirely proper, that the grantor, should have been permitted to retain the possession of the property conveyed, until he was in default, or the *cestui's que trust* were likely to injured. The instruction asked for, which supposes, that Lawson reserved to himself a maintenance, or other interest out of the property conveyed, was founded upon a mis-

conception of the deed.   He reserved nothing but what the law would have given him; viz: so much of the money, or property, as might have been left, after satisfying the purposes of the deed. But for the reasons already stated, under the first and third grounds taken by the plaintiff, the judgment of the Circuit Court is reversed, and the case remanded.