# Mound City Mutual Life Insurance Company v. Huth.

### Action on Policy of Life Insurance.

1. *Construction of forfeiture clause in policy.* — A stipulation in a policy of life insurance, that if the first annual premium is duly paid, default in subsequent payments shall not work a forfeiture of the policy, but the holder, on surrendering it within thirty days after such default, shall receive a paid-up policy for the amount which the value of the surrendered policy, ascertained in a specified way, and considered as a gross single premium, would buy according to the single-premium rates of the company, cannot be construed to mean that the full amount of the policy is assured to the holder by virtue of the payment of the first annual premium.

2. *Notice printed on policy, limiting powers of agents in cases of forfeiture, held modified by company's course of dealing.* — A life insurance company cannot defeat a recovery on a policy, by invoking a stipulation contained in a notice to policy hold-

[Mound City Mutual Life Insurance Company *v.* Huth.]

ers, printed on the back of the policy, that its agents have no power to waive a forfeiture, or to receive a premium over-due, when the conduct and course of dealing of the company and its agent have been such as justified the insured, when making an over-due payment, in believing that the agent had authority to receive it.

3. *Agency; ratification of unauthorized acts of third person.* — Generally, the authority of an agent is altogether personal, and cannot be delegated to another; yet, both the agent and his principal may ratify the unauthorized acts of a third person in their behalf, and the principal is bound by the agent's ratification of such unauthorized act, if the agent himself had authority to perform the act.

APPEAL from the City Court of Mobile.

Tried before the Hon. C. F. MOULTON.

This action was brought by Mrs. Julia Huth, the widow of Francis A. Huth, deceased, against the appellant, a corporation chartered under the laws of Missouri; was founded on a policy of insurance for $3,000, which the deceased had effected on his own life, in favor of his widow, with said corporation; and was commenced on the 21st day of March, 1872. The policy was dated on the 1st June, 1870. Its material stipulations, the construction of which is involved in the case, are copied at length in the opinion of the court. By its terms, the annual premiums were payable semi-annually, on the 1st day of June and the 1st day of December. The second payment for the year 1870 was made to one Smith, who was acting for one Poindexter, the defendant's agent in Mobile; and said Smith testified that it was not made until after the expiration of thirty days from the time when it became due, and that Poindexter received the money from him without objection. About the time when the premium became due on the 1st of June, 1871, Poindexter gave the receipt to Smith for collection, and he presented it to the insured, who asked for further time; and Poindexter afterwards told Smith that he had granted an extension of time. Smith kept the receipt until some time in September, and then returned it to Poindexter. On the 7th October, 1871, the insured sent for Smith, told him that he had the money to pay his premium, and asked him to go to the insurance office and pay it for him. On the 9th October, Smith received the money from him, and carried it to Poindexter's office; and finding that Poindexter was absent, he paid it to one Kennerly, who was in Poindexter's office, and had possession of the defendant's premium receipts, and who gave him the proper receipt for the insured, which he delivered. The insured was sick in bed when Smith saw him on the 9th, and he died on the 14th October. Smith testified, that he did not consider him dangerously ill, and that he did not mention the fact of his sickness to Kennerly when paying him the money. Kennerly paid over the money to one Jones, whom Poindexter had left in charge of his business during his absence, and from whom Poindexter received it, on his return to the city, on or about the 10th October. On the 17th October,

[Mound City Mutual Life Insurance Company v. Huth.]

Poindexter informed the company of his death; and on the 21st, in his report, charged himself with the amount of the premium received as above stated. The company, on inquiring into the facts of the case, declined to receive the money, and instructed him to return it.

On the evidence adduced, of which the above is a brief summary, the court charged the jury as follows: "It is admitted by the defendant's counsel, that the policy in this case was issued by the defendant, and that the first annual premium was paid, as required by the terms of the policy. It is expressed in the policy that the life of Francis A. Huth was insured for three thousand dollars. Now, if you believe, from the evidence, that the insured is dead, and that he died a natural death, and of the disease as stated by the witnesses, and not in consequence of a disease contracted or death from any of the exceptional causes expressed in the policy, then the plaintiff would be entitled to recover, as the policy is made payable to her as the wife of the deceased. In this event, the plaintiff would be entitled to recover the amount of the policy, with legal interest, to be computed from after sixty days from the presentation of the claim by the plaintiff; and the defendant would be entitled, from that amount, to a credit for the amount of such premium notes issued by the defendant to the insured. This sum should be deducted from the amount of the policy before you compute the interest; and the verdict should be for the balance, if you find for the plaintiff. If you should find that the insured came to his death in consequence of a violation of any of the conditions specified and excepted in the policy, then your verdict should be for the defendant."

The defendant excepted to this charge, and requested the following charges, which were in writing: —

"1. The policy sued on means, that if there be a default in the payment of any premium, after the first annual premium has been paid, the policy is forfeited, except for the purpose of being surrendered by the holder, that he may receive, in consideration thereof, a paid-up policy, such as is described in the policy to be surrendered.

"2. If the jury believe, from the evidence, that there has been a default in the payment of any premium since the first annual payment, which default has not been waived by the defendant, or its agent thereunto lawfully authorized, the plaintiff cannot recover in this action.

"3. An agent cannot delegate his authority, unless empowered so to do by his principal; and if the jury believe, from the evidence, that Poindexter was the company's agent, and had no such power of delegation from his principal, the receipt of the premium by Kennerly, as Poindexter's agent, did not bind the defendant, unless ratified by the defendant.

" 4. Poindexter had no express authority, under his written contract of agency with the defendant, or under the printed by-laws and regulations of the defendant, which have been given in evidence, to waive a forfeiture of the policy by receiving the premium after a default in the payment of the same ; but the jury must look to the whole evidence, and if they find that there was no express authority to the agent to receive the premium and waive the forfeiture, the defendant cannot be held liable on the ground of express authority ; and if they believe, from the evidence, that there has not been a subsequent ratification by the defendant of the act of the agent, the defendant cannot be held liable on the ground of subsequent ratification. But, though there may have been neither express authority from the defendant before the act, nor a subsequent ratification of it by him, yet, if these acts and conduct of his, known to the insured, which justified the insured to infer that the defendant had given the authority, and if the jury further believed that the insured had reasonable grounds for this inference, then the defendant would be liable for the act of the agent.

" 5. But the jury cannot take into consideration any acts or conduct of the defendant tending to establish such inference, if the insured had express notice that the agent had no such authority ; and the insured was bound by a notice to that effect, printed on the back of the policy.

" 6. One of the stipulations in the contract, on the part of the insured, is, that he was in good health ; that is to say, in the state of health described in his application for insurance ; and another stipulation is, that if application is made for a renewal of the policy, after it had been forfeited by reason of the non-payment of a premium when due, the application must be accompanied with a certificate as to the health of the applicant, that the defendant may judge whether it will renew the policy or not ; and if the jury believe, from the evidence, that the assured, when the renewal premium was paid, was ill of the disease of which he died, and there was a concealment of this fact from the agent, this would be a fraud upon the defendant, and would vitiate the renewal to the extent of rendering it null and void.

" 7. Although the jury should believe that the assured had reasonable ground to infer, from the previous course of dealing between the defendant and its agent, that the agent had authority to dispense with the presentation of the certificate as to health ; yet this would not justify the concealment mentioned in the last charge.

" 8. Although the jury should find, from the evidence, that the plaintiff had reasonable grounds to believe, from the previous course of dealing between the defendant and its agent,

[Mound City Mutual Life Insurance Company v. Huth.]

Poindexter, that the latter had authority to receive premiums after due, and thereby waive the forfeiture of policies, — the party applying for renewal being in his usual health, as stated in his original application for insurance; yet this would not show an authority in the agent to receive premiums after due, and waive forfeitures, the party applying for renewal being sick, and the sickness being concealed from the agent.

" 9. The renewal of a policy is, in effect, the issuance of a new policy; and if the jury find that the agent, Poindexter, had the power to grant a renewal, the same good faith should have been practised towards him, when the renewal was asked for, as the law requires in cases of application for original policies; and if the jury find that, when the last premium was paid, a material fact was concealed from him, this concealment would vitiate the renewal, it being a fraud in fact upon the defendant, and the plaintiff cannot recover."

The court refused each of these charges, and the defendant excepted to their refusal; and the refusal of these charges as asked, together with the charge given by the court, and several rulings on questions of evidence, which are immaterial, are now assigned as error.

R. & O. J. SEMMES, for appellant.— 1. The judgment must be reversed, on account of the manifest error in the affirmative charge of the court, construing the policy as if it contained no forfeiture clause. The proper construction of this clause is asserted in the first charge asked. The whole scheme of life insurance is based on the idea that the payment of the annual premiums, in consideration of which the policy is granted, is a condition precedent, the failure or non-performance of which works a forfeiture of the policy; and the courts have so uniformly held. *Howell* v. *Knickerbocker Life Insurance Company*, 44 N. Y. 276; *Want* v. *Blunt*, 12 East, 183; *Nightingale* v. *State Mutual Life Insurance Company*, 5 R. I. 38; *Inman* v. *Western Fire Insurance Company*, 12 Wendell, 452; *Hammond* v. *Amer. Mutual Life Insurance Company*, 10 Gray, 366; *Bouton* v. *Amer. Mutual Life Insurance Company*, 25 Conn. 542.

2. The other charges asked and refused assert in effect two propositions: 1st, that the policy was forfeited by the non-payment of the premium due 1st June, 1871, for more than thirty days after it became due; and, 2d, that this forfeiture was not waived by the defendant. The first of these propositions is the express stipulation of the parties themselves, as contained in the policy. The second proposition opens up all the facts of the case, and several points of law arising on those facts; to which the attention of the court is specially invited, as this is

the first case which has arisen for the decision of our courts, on a question of life insurance, — a business which is rapidly extending, and which involves many important interests. *First*, as to the powers of the agent : Poindexter was a special and limited agent, who had no power to make or alter contracts, or to waive forfeitures once incurred; and whose whole duties were confined to receiving and forwarding applications for policies, and receiving the premiums when the policies were issued by the company. As to the difference between such an agent and a general agent, see Story on Agency, § 19. The insured was duly notified of this limitation of the powers of the agent, which was printed on the back of his policy, and which thereby became a part of the contract itself. 1 Phillips on Insurance, § 68. This being the written contract of the parties, no evidence of a custom, as to a different mode of dealing, could be received to contradict it. *Howell* v. *Knickerbocker Life Insurance Company*, 44 N. Y. 282 ; *Ruse* v. *Mutual Benefit Life Insurance Company*, 23 N. Y. 516. The testimony of Smith, which was relied on to prove such custom, or course of dealing, was inadmissible for the further reason, that it was not shown the insured had any knowledge of such course of dealing. Story on Agency, § 81; Smith's Mercantile Law, 170 ; *St. John* v. *Redmond*, 9 Porter, 428. The indulgence which Poindexter gave was not accepted by the insured; and the premium receipt had been withdrawn from Smith several weeks at least before the insured paid him the money. The circumstances under which the receipt was afterwards procured, without a shadow of authority on the part of any of the persons connected with its delivery, constituted a fraud on the defendant, which was promptly repudiated on the discovery of the facts.

*Second.* The concealment of Huth's illness at the time the receipt was procured and delivered to him was a fraud on the defendant, and avoided the policy. The policy was at that time forfeited, and could only be restored by the company itself, the agent having no such power. If application had been made to the company for a restoration of the policy, the conditions required a certificate as to the health of the insured ; and these conditions were printed on the back of the policy. Admitting, for the sake of argument, that Poindexter had authority to restore the forfeited policy, the insured was bound to present this certificate as to his health. Even if the policy had contained no such stipulation, and nothing had been stated in the printed notice as to a certificate of health, the insured was bound in good faith to disclose his condition. Health is the most important element in the business of life insurance, and lies at the foundation of the contract. Good faith requires

[Mound City Mutual Life Insurance Company v. Huth.]

that the insurer shall be put in possession of all the facts material to the proposed risk; and a misrepresentation, or concealment, will avoid the contract. *Huguenin* v. *Rayley*, 6 Taunton, 186; *Maynard* v. *Rhodes*, 5 Dow. & Ry. 266; *Morrison* v. *Muspratt*, 4 Bing. 60; *Lindenau* v. *Desborough*, 3 Man. & Ry. 45.

J. LITTLE SMITH, *contra.*— 1. If there was any forfeiture, it was waived. The defendant's agent had given the insured time in the payment of a previous premium, and had consented to do so in regard to the last premium. The general usage of the defendant and its agent, and their course of dealing with the insured, show that the right of forfeiture was waived, although the last payment was not made punctually, and although the insured was sick when it was made. The authorities are clear and full to this point. *Miller* v. *Brooklyn Life Insurance Company*, 12 Wallace, 285–302; *Buckbee* v. *United States Insurance Company*, 1 Bigelow's Ins. Rep. 406; *Helm* v. *Phil. Insurance Company*, 1 Ib. 688; *Hodsdon* v. *Guardian Life Insurance Company*, 97 Mass. 144; *S. C.* 1 Big. Ins. R. 219; *Wing* v. *Harvey*, 2 Big. Ins. R. 365, and note; *Rockwell* v. *Mutual Life Insurance Company*, 1 Ib. 726; *Mowry* v. *Home Ins. Co.* Ib. 703; Bliss on Life Insurance, §§ 267, 297, 298.

2. There could be no forfeiture, independently of these reasons, because the premium was paid, so far as the company was concerned. The proof shows that the company charged up to the agent the premiums due but not paid; and the agent permitted this, and became responsible to the company, because he wished to earn the commissions on renewal, which would accrue so long as the policies remained in force, but ceased if the policies were allowed to be forfeited. So long as the company held Poindexter liable, and were willing to reap the benefit of the continuing policies, they could not repudiate and treat the policy as forfeited. This ends the question whether the payment of the premium was a condition precedent.

3. It must be borne in mind, in considering this case, that the burden of showing a non-compliance on the part of the assured with the conditions of the policy is on the defendant. Bliss on Insurance, 590, § 380; 1 Bigelow's Ins. R. 218, 726; 2 Ib. 370; 13 Gray, 431; 12 Cush. 426.

4. The policy is written by the defendant, and is to be construed most strongly against the writer. The policy expressly provides, that if the first premium has been fully paid, no subsequent default shall work a forfeiture of the policy. This was held out as an inducement to persons to insure in the com-

pany; and, as a further inducement, it was also stipulated that the assured might change the contract, cease all further obligation to pay, and convert the original policy into a paid-up policy, provided such election was made within thirty days after default. It was also provided, in case of such election, that not only the amount due on loans, but all other indebtedness to the company, should be first deducted. The proper construction of this clause, tested by the rules applicable in such cases as above quoted, is, that the company agreed, after the first payment was made, to trust to the credit of the assured, guarantied by Poindexter, and the policy became operative, and only forfeitable or convertible at the election of the assured. If the policy was forfeited by such default, there would be no consideration to support the agreement that the assured could convert it into a policy of a different kind.

5. The policy can derive no aid or force from the notice indorsed on it, which is not referred to in the policy, and forms no part of it. The mere publication of such notices does not show that the party assented to them, or even that he had knowledge of them. 16 Wendell, 481; 5 Hill, 188; 5 Denio, 326; 6 How. U. S. 344; 2 Greenl. Ev. § 215.

B. F. SAFFOLD, J. — The appellee claimed of the appellant the full amount of a policy of insurance, issued by the latter in her favor, on the life of her husband, Francis A. Huth. The questions at issue between the parties are embraced in the following statement. The policy contained this stipulation : "If the first annual premium shall have been fully paid to this company, and default shall be made in the payment of any premiums thereafter to become due and payable, then such default shall not work a forfeiture of this policy; but if it be surrendered within thirty days after the date of such default, this company will, in consideration thereof, issue a paid-up policy, payable as hereinbefore provided, for the amount which could be bought by the net value of this policy (the value to be determined on the basis and assumptions contained in section 29 of an act of the State of Missouri, entitled ' An act for the regulation of Life Assurance,' approved March 10th, 1869), considered as a gross single premium, according to the single-premium rates of this company. And it is expressly understood, that the sum of all loans, or other indebtedness, due to this company, shall be first deducted from the amount of such net value." The premiums in this case were payable semi-annually, on the 1st of June and December, or within thirty days thereafter. On the back of the policy were *instructions*, by way of " *Notice to policy holders*," one of which was to this effect : "*Powers of agents.* — Agents are not author-

ized to make, alter, or discharge contracts, waive forfeitures, or bind the company in any way; their duties being simply the reception and transmission of applications for policies and premiums, under the rules and instructions laid down in their letters of appointment."

The premiums of the first year having been paid and accepted by the company, the one due June 1st, 1871, or thirty days thereafter, was not paid until October 9th, 1871. It was not then paid to the company's agent, Poindexter, nor to Jones, whom Poindexter left in charge of his business during a temporary absence; but to Kennerly, who seems to have been acting for Jones. The money was handed over to Poindexter on the 10th of October, 1871. Francis Huth died on the 14th. Poindexter notified the company of his death on the 17th, but said nothing about the premiums. On the 19th, the secretary of the company suggested irregularity in its payment; and on the 27th of November, 1871, directed Poindexter to return the money received by Kennerly, who, he said, had no authority to receive premiums, or waive forfeitures, and to correct his report of the payment which he had made on the 21st of October.

1. The court charged the jury, in substance, as we construe the charge, that the first annual premium having been paid, as required by the terms of the policy, default made in the payment of subsequent premiums would not forfeit it; and if no other obstacle was shown than such default, the plaintiff was entitled to recover. There was error in this charge. The policy, on its face, while declaring that such default should not work an absolute forfeiture, most pointedly expresses what should be the right of the holder in such a case, to wit: a paid-up policy for the amount which the value of this policy, ascertained in a specified way, and considered as a gross single premium, would buy, according to the single premium rates of this company. The premiums were to be paid semi-annually, as long as the insured lived, and it is impossible to construe the provision that default in their payment after the first year should not work a forfeiture of the policy, to mean that no payments need be made after the first year.

2. The charges asked by the defendant, and refused, may be best considered in a general manner. Corporations, of a character which brings them into extensive and promiscuous intercourse with the public, are prone to endeavors to limit their liability in a way not sanctioned by the general law, and inconsistent with their duties to the public. The courts have not hesitated to disregard such attempted limitations, and to hold them to the legitimate responsibilities of their business. In this case, the agent was not even at liberty to write and sign

a receipt for the premium, when paid to him ; but he had to deliver receipts furnished him, signed by the president or secretary, and countersigned by him, to show that he had received the money. Yet we find the company putting into his hands, in advance, its signed receipts, subject only to his good faith in disposing of them. It would be a fraud on the policy holders, after allowing such license as this, to suffer the company to plead its instructions, or its contract with the agent, in absolute repudiation of its receipt. The possession of it by the agent is calculated to deceive the policy holder in respect to his authority. A payment of the premium, or a tender of it within the time, would be sufficient without a receipt. If the same, after the time, is to be ineffectual with the receipt, the agent, by his possession of it, is enabled to impose on the policy holder the belief that he is authorized to deliver it. The natural construction of the instructions is, that the agent obtains the receipt from the company after he has received the premium.

The second semi-annual premium of the first year was not paid until after thirty days from the time it became due. But the agent received it, and transmitted it to the defendant, who retained it without objection. This was clearly a waiver of the default in that instance. An extension of time was given by the agent to Huth on the premium due June 1, 1871, and it was proved that he frequently gave time to other insured persons. These facts must modify the instructions as to the powers of the agent. If the principal does not adhere to his own contract with his agent, he is bound by any departure from it which third persons may from his own conduct reasonably attribute to his authority. *Golding* v. *Merchant & Co.* 43 Ala. 705. The deduction is, that if Poindexter accepted the payment made of the premium due June 1, 1871, and sanctioned the giving of the receipt, when informed of the facts ; and if the conduct of the defendants had been such as authorized Huth, when he made the payment, to believe that the agent had authority to waive his default, then the default was waived. The health of Huth at the time can have no other effect than as evidence tending to show whether there was a waiver or not. He had not died, and he had not misrepresented his health. He was in good health when his default first occurred. Perhaps the neglect to pay was due entirely to the promise of the agent to give him time, and would have continued longer if he had not fallen sick. *Miller* v. *Brooklyn Life Ins. Co.* 12 Wall. 285.

3. The defendant is not bound by any of the acts of Kennerly, unless in the way of subsequent ratification or confirmation, by itself or its authorized agent. The authority of an

agent is exclusively personal, unless from the express language used, or from the fair presumptions growing out of the particular transaction, or of the usage of trade, a broader power was intended to be conferred on the agent. Story on Agency, § 14. Both the principal and his agent may ratify the acts in their behalf of an unauthorized person; and the principal is bound by the ratification or adoption of his agent, if the agent had authority to do the thing which he ratified or adopted. Story on Agency, §§ 239, 244, 249.

As the exceptions to testimony are not argued by the appellant, and do not seem to be difficult of solution, we omit the consideration of them.

The judgment is reversed, and the cause remanded.