# Insurance Company of North America *v.* Thornton *et al.*

*Action upon a Verbal Contract of Fire Insurance.*

1. *Principal and agent; when agent has authority to bind sub-agent.*—Where, in the proper transaction and carrying on of business committed to an agent, it is necessary to have the services of sub-agents, such agent has authority to appoint sub-agents, and the acts performed by sub-agents so appointed, in the discharge of the duties conferred on the agent, are binding upon the principal.

2. *Same; when agent of insurance company has power to appoint sub-agents whose acts are binding upon the company.*—Where in a certificate of authority issued by an insurance company to its agent, he is invested "with full power to receive proposals for insurance against loss or damage by fire" within a certain territory, "to fix rates of premiums, to receive monies and to countersign, issue, renew and consent to the transfer and assignment of policies of insurance, * * * and in all manner to attend to the business and duties of such agency, subject to the rules and regulations of said company," and it is further stipulated in said agent's commission that "all policies shall be null and void and of no binding effect upon this company. if issued upon property not situated within the district in which the agent issuing same shall reside, and for which he is appointed," such agent has the right and authority to appoint sub-agents and to authorize them to solicit and receive applications for insurance within the designated territory, to fix the rates of premiums and forward the applications, on which, if approved, the appointing agent is to issue policies insuring against loss from the date named in the application; and the sub-agent so appointed, is the agent of the company for the purposes named and within the given territory, and his acts, while acting in such capacity, are the acts of the company, and binding upon it.

3. *Same; same; same*—Where an application has been made to such sub-agent authorized to issue the policy, the company is liable for a loss occurring before the issuance of the policy and after the date named in the application for the commencement of the risk.

[Insurance Company of North America, v. Thornton *et al.*]

4. *Same; same; same.*—In such a case, where there is a conflict in the evidence tending to show whether or not the policy issued was within the territory assigned to such agent, it is a question for the jury to determine whether the property so insured was situated within such territory; and if the jury should determine that the property insured was not within the designated territory, the insurance company is not liable for loss or injury by fire. (Tyson, J., *dissenting.*)

5. *Same; same; admissibility of evidence.*—In an action upon a verbal contract of insurance, where it is shown that a certain named person was the defendant's general agent within a designated territory, and that the contract was made with a sub-agent appointed by him, and there is a question as to whether or not the property was situated within the territory given to the general agent, acts and declarations of such general agent, tending to show the limits of the territory embraced in his agency, are admissible in evidence.

APPEAL from the Circuit Court of Pike.

Tried before the Hon. JOHN P. HUBBARD.

This action was brought by the appellees, H. C. Thornton and others, suing as partners against the Insurance Company of North America; and counted upon an alleged verbal contract of insurance against fire, on a stock of merchandise. The facts of the case necessary to an understonding of the decision on the present appeal are sufficiently stated in the opinion. There were several exceptions reserved to the rulings of the trial court upon the evidence, but it is deemed unnecessary to set out in detail the facts relating to these rulings.

The defendant separately excepted to the following portions of the court's oral charge to the jury: (1.) "If Mr. Glenn had the authority to make a verbal contract of insurance with Mr. Thornton if he had been there present and doing it himself, that this was not such an act that he could not have authorized McGilvray to do for him. In other words, he could appoint another man to do for him what he could do himself in this particular, that is, to effect insurance and thereby bind the company as effectually as Mr. Glenn could bind them." (2.) "I charge you that the appointment of McGilvray was such an act as the general agent had power to do, that is, to appoint another

and charge him with the power and authority to make verbal contracts of insurance and thereby bind the company if he himself had the power to do that." (3.) "The certificate of authority introduced in evidence tends to limit this authority to a particular locality; but this would be in the nature of private instructions to him so far as other parties are concerned, and the limitations contained therein are not such as to defeat the appointment by Mr. Glenn of a sub-agent."

The defendant requested the court to give to the jury the following written charges, and separately excepted to the court's refusal to give each of them as asked: (4.) "If the jury believe the evidence in this case, they will find a verdict for the defendant." (5.) "If the jury believe from the evidence that Glenn was merely the local agent of the defendant at Dothan, with only such powers as are shown by the evidence, then he had no authority to authorize McGilvray to go to Enterprise and make contracts binding on the defendant." (6.) "If the jury believe from the evidence that Glenn was merely the local agent of the defendant at Dothan, with only such powers as are shown in the evidence, then he had no authority to appoint a sub-agent at Enterprise, a place thirty-five or forty miles from Dothan, and accept insurance contracts binding on the defendant." (7.) "Even if the plaintiffs applied for insurance, until said application was agreed to by Glenn, the agent of the defendant, or by the defendant, there was no binding contract." (8.) "Under the evidence in this case there can be no recovery by the plaintiff, no matter what the authority given by Glenn to McGilvray to take applications at Enterprise." (9.) "Under the evidence in this case, Glenn had no authority to appoint a sub-agent with authority to bind the defendant, and if Glenn did authorize McGilvray to take applications at Enterprise and bind the defendant, a contract so made by McGilvray would not be binding on the defendant." (10.) "There is no evidence in this case that McGilvray was authorized by or on behalf of the defendant to bind defendant on a verbal contract of insurance without the payment of the pre-

mium." (11.) "If the jury believe the evidence, they can not find for the plaintiffs on the first count."

There were verdict and judgment for the plaintiff. The defendant appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

WATTS, TROY & CAFFEY, for appellant.—There being nothing in the record to connect McGilvray directly with the company, to show that it consented for him to represent it, he can only be connected through Glenn. But Glenn was only an agent, and his certificate of authority did not give him any authority to appoint a sub-agent, and the maxim of the law is, *delegatus non potest delegari.*—*Haralson v. Stein,* 50 Ala. 347; Mechem on Agency, §§ 184-5; 1 Am. & Eng. Ency. Law (2d ed.), 972 and note 2; *Johnson v. Cunningham,* 1 Ala. 249.

The character of the agency determines the power of the agent, as much as any other element; and the generality or speciality is limited by the field within which the agent is empowered to operate. Given the field of operation, then within that field the agent has limited or general powers. Here the field of operation occupied by Glenn was the making himself of contracts of insurance. So long as he confined himself to that field, it may be admitted that his powers were general. But when it comes to authorizing strangers to go about the country and themselves make contracts and more especially contracts of the unusual character sought to be maintained in this suit,—in parol, binding from date without payment of premium,—a new field is opened; one which Glenn never under the evidence was authorized in fact to enter, nor which either he or defendant company ever held him out, either to plaintiffs or to anybody else, as authorized to enter. *Scarbrough v. Reynolds,* 12 Ala. 259; *Wailes v. Neal,* 65 Ala. 61; *Springfield Ins. Co. v. DeJarnett,* 111 Ala. 261; *Waldman v. Ins. Co.,* 91 Ala. 170; *Talledaga Ins. Co. v. Woodward,* 44 Ala. 288-9; *Talladega Ins. Co. v. Peacock,* 67 Ala. 262; *Womack v. Bird,* 63 Ala. 507;

[Insurance Company of North America v. Thornton *et al.*]

*Tanner v. Hall,* 86 Ala. 305; *Gibson v. Snow,* 94 Ala. 346; *Reynolds-v. Collins,* 78 Ala. 94.

The powers appellee contend Glenn had are more those of an universal than of a general agent. CLOPTON, J., says in *Louisville Coffin Co. v. Stokes,* 78 Ala. 375: "It is a universal and indisputable rule that 'the authority of general agent is measured by the usual scope and character of the business he is empowered to transact.'" It can hardly be said that it is usual and customary for local agents of insurance companies to appoint sub-agents to go into localities other than those in which they are themselves authorized to do business and to confer upon them power to bind the principal on parol contracts without the payment of premiums. Whenever that becomes usual and customary, the business of insurance by foreign corporations will cease, for such an irresponsible and haphazard method of doing business would drive the best of them inevitably into bankruptcy—*Springfield Ins. Co. v. DeJarnett,* 111 Ala. 261; 1 Am. & Eng. Ency. Lew (2d ed.), 985, note 1; *Syndicate Ins. Co. v. Catchings,* 104 Ala. 176; *Wallis Tobacco Co. v. Jackson,* 99 Ala. 460; 3 Brickell Dig., 23, § 61.

As we have pointed out above, the power which Glenn had under his certificate of authority being delegated to him by his principal, he could not confer that on a sub-agent. More especially is this true because it is manifest that the exercise of Glenn's authority required skill and discretion. Where the authority delegated to an agent requires skill and discretion in its exercise, it matters not whether the gent is general or special, he can not without express authority from his principal, delegate it to another.—*Waldman v. Ins. Co.,* 91 Ala. 173; *McClure v. Ins. Co.,* 4 Mo. App. 148; *McKinnon v. Volmar,* 75 Wis. 82; 6 L. R. A. 124; 2 English Ruling Cases 303; 1 Joyce on Insurance, § 396; Morawetz on Corporations, § 249.

FOSTER, SAMFORD & CARROLL, *contra.*—A general agent of an insurance company is one who can contract insurance, issue policies, and to whom blank policies

[Insurance Company of North America v. Thornton *et al.*]

are issued signed by the president and secretary, and to be countersigned by him.—1 May on Insurance, § 126. "An agent authorized to issue and renew policies, and to transact the business of the company in the particular locality is a general agent."—11 Am. & Eng. Ency. Law, 323 (4); *Pitney v. Glens Falls Ins. Co.*, 65 N. Y. 6; *Post v. Aetna Ins. Co.*, 43 Barb. (N. Y.) 351; *Continental Ins. Co. v. Ruckman*, (Ill.) 20 N. E. Rep. 77; *Miller v. Phoenix Ins. Co.*, 27 Iowa 203; *Veile v. Ins. Co.*, 26 Iowa 9; *Machine Co. v. Ins. Co.*, 50 Ohio St. 558.

"The powers of an agent are *prima facie* coextensive with the business entrusted to his care, and will not be narrowed by limitations not communicated to the person with whom he deals. An insurance company establishing a local agency must be held responsible to parties with whom they transact business, for the acts and declarations of the agent within the scope of his employment, as if they proceeded from the principal." *Ins. Co. v. Wilkerson*, 13 Wallace 222; *Miller v. Ins. Co.*, 31 Iowa 226; *Ins. Co. v. Catchings*, 104 Ala. 189.

The affirmative fact of notice of any limitation upon Glenn's authority must be proven by the party asserting that the other had notice. The burden is not on the one denying notice. The same rule prevails in the law merchant, and in every judicial relation of which we are aware.—*Bodenheimer v. Chesson*. 111 Ala. 542.

"And generally agents of insurance companies authorized to contract for risks, receive and collect premiums, and deliver policies, may confer upon a clerk or subordinate authority to exercise the same powers. The service is not of such personal character as to come under the maxim, *delegatus non potest delegari*."—1 May on Insurance, § 154; *Kuney v. Ins. Co.*, 36 Hun. 66; *Bodine v. Ins. Co.*, 51 N. Y. 117; 10 Am. Rep. 566.

McCLELLAN, C. J.—This is an action by H. G. Thornton and others, partners, against the Insurance Company of North America on an alleged verbal contract of insurance of a stock of merchandise. For the purpose of reviewing the action of the trial court in re-

fusing the affirmative charge requested by the defendant, the tendencies of the evidence most favorable to the plaintiffs may be stated as follows: One Glenn was the agent of ten or twelve insurance companies including the defendant. He resided and had his office at Dothan, in Henry county, Alabama. The territory covered by his agency for defendant included Dothan and its vicinity. As such agent in that territory, he was supplied by the company with blank applications, etc., and with blank policies duly signed by the proper officers of the company. The certificate of authority issued to him by the company invested him "with full power to receive proposals for insurance against loss or damage by fire, in Dothan and vicinity, to fix rates of premiums, to receive moneys, and to countersign, issue, renew, and consent to the transfer and assignment of policies of insurance signed by the president and attested by the secretary of said company, and in all manner to attend to the business and duties of said agency, subject to the rules and regulations of said company, and to such instructions as may from time to time be given by its officers;" and it was further set forth in said certificate that "it is expressly understood that all policies shall be null and void and of no binding effect upon this company if issued upon property not situated within the district in which the agent issuing the same shall reside and for which he is appointed." Glenn had been carrying on this agency for defendant for several years receiving applications and premiums and filling up and countersigning policies intrusted to him bearing the signature of the president of the company and attested by its secretary. For three or four months prior to the transaction here involved, one McGilvray had been working in Glenn's office learning the insurance business and assisting Glenn. During that time he had gone to Hartford, fifteen or twenty miles from Dothan, to Pinckard, twelve miles distant, and to Headland, twelve or fifteen miles from Dothan, under directions and instructions of Glenn to take blank applications for insurance in defendant company, go to said places for the purpose

of making contracts of insurance on property there situate, and if he got any applications he was to close the contracts of insurance applied for as of the date of the applications respectively, and send the applications to Glenn, whereupon Glenn would issue the policies applied for and send them to the applicants. He did make such contracts at these several places, and sent the applications for policies to Glenn at Dothan, and policies were countersigned and issued by Glenn on these applications. About the last of February, 1899, McGilvray went to Enterprise, a place about thirty-five miles by rail from Dothan, for the purpose of soliciting insurance. He testified: "I went there under instructions from Mr. John A. Glenn [defendant's agent] of Dothan, who was engaged in the insurance business at that time. * * * He told me to take some applications for the North America Insurance Company [defendant] and go over there, and 'if you get any applications, I will write the policies and send them to you, and you will just consider it covered from the date of application.' He told me to receive the premiums, and at the end of the month we would have a settlement, and he would give me my commission and take the rest." On March 1, 1899, McGilvray acting under these instructions from Glenn took the applications of Thornton's firm for a policy of insurance on their stock of goods at Enterprise, agreed with Thornton that the risk began on that day, and mailed the application to Glenn at Dothan to have the policy written up and sent to him, McGilvray, at Enterprise; and on March 17, he collected the premium from Thornton, deposited it in a local bank, wrote to Glenn that the premium was in said bank subject to his, Glenn's, draft. On March 22, 1899, the stock of merchandise covered by said alleged contract of insurance was damaged by fire to the extent of four hundred and fifty dollars. Glenn was away from his office when the application sent by McGilvray reached there and continued absent until the day after the fire, neither the envelope containing the application nor McGilvray's letter relative to the premium was opened until Glenn's return, so that he had

no notice of the transaction until the loss had occurred and come to his knowledge. He then repudiated the transaction, refused to accept the premium and denied defendant's liability in the premises. As bearing on the inquiry whether Enterprise was within the territorial limits of Glenn's agency, it was shown that that place was between Dothan and Elba by the railroad route, and defendant company had an agency at Elba; but whether Enterprise was nearer Elba or Dothan is not shown, nor does it appear that the Elba agency embraced Enterprise. On these tendencies of the evidence, Glenn was, of course, the general agent of defendant within the limits of the Dothan agency, and it was open to inference by the jury that Enterprise was within those limits; and hence was in the vicinity of Dothan within the meaning of Glenn's authorization of agency and hence further that the agency embraced the country surrounding Dothan to the distance of thirty-five miles. Upon such finding of the fact by the jury, the company is held to the contemplation that Glenn should do whatever was reasonably necessary to secure its share of the fire insurance business within that territory and to have authorized him thereunto. Upon authority recognized as sound by this court, the appointment by Glenn of sub-agents to do for the company what he himself was empowered to do was within the authorization of the company to him, such sub-agents being presumed to be necessary to the proper representation of the company's interest throughout so large territory, and their appointment by Glenn to be impliedly authorized by the company itself. So it was ruled in the strikingly analogous case of *Kuney v. Amazon Ins. Co.*, 36 Hun. 66. One Miller was the agent of the insurance company under an appointment which gave him "full powers to receive proposals for insurance against loss or damage by fire and lightning, to act as surveyor, to appoint surveyors for property to be insured in Seneca county, New York, and vicinity, and insurance there to make, by policies of said Amazon Insurance Company, countersigned by said Miller, agent, and renew the same, grant assent to assignments or transfers, and in

all other matters and things, to attend to the business and duties of said agency in the manner and form prescribed by the company." The agent there as here was supplied with blank policies signed by the company's executive officers, which he was authorized to fill up and issue to applicants for insurance. He was also authorized, as was Glenn in this case, to fix the premiums to be paid by the insured, etc., etc. There, as in this case, the domicil of the company was in a State foreign to the agency. There as here the contract of insurance was made with a sub-agent, one Jacoby appointed by Miller, and no policy was issued, and the transaction between the sub-agent and the plaintiff did not come to the knowledge of the agent until after the loss occurred. The court said: "The defendant to escape liability on this contract made in its name by one purporting to act for it, disclaims that Jacoby was authorized in any form or manner, or under any circumstances, to make and conclude a contract of this character. The plaintiff's position on the question of Jacoby's authority to make the contract is this: that Miller as the general agent of the company, having charge of its agency at Seneca Falls, was authorized under his commission and by virtue of his position as superintendent of defendant's business at that place, to employ all necessary agents, clerks and surveyors to enable him to conduct the business with accuracy, intelligence and promptness. That when he did, in fact, employ others to act under him to do such things as he himself might do within the limits of his powers and in connection with his agency, their acts and contracts would be binding on the company the same as if made personally by Miller, the general agent. We concur in plaintiff's position as a legal proposition necessarily resulting from the nature of the power expressly delegated, and from the character of the business and the distance the local offices were from the home department of the defendant's business. It is not to be presumed the company expected or intended that its general agent, in a foreign State, would give personal attention to all its affairs, and he himself make every contract of insurance entered into by the company within the territorial lim-

its of his agency. No such limitation on his powers is contained in his written commission, and it is unreasonable to suppose that the company intended to that extent to restrain his action and operation. He was authorized to insure property in several of the largest counties in the State, where a great amount of valuable property seeks insurance against fire." The case of *Krum v. Jefferson Fire Ins. Co.*, 40 Ohio St. 225, is also much like the one at bar. There Towson was the general agent of the company in Lancaster and vicinity. The extent of the territory covered by his agency was evidenced by what had been done by him during the two or three years he acted as agent prior to the transaction involved in the suit. During this time, with the knowledge of the company, he had received applications for insurance upon property situated in Fairfield, Perry and Licking counties. The court said: "It is evident that in this large extent of territory, Towson could not secure for the company its fair proportion of the business of insurance without the aid of solicitors and sub-agents. The interest of the large business committed to his care required the assistance of sub-agents. He did not exceed his authority in appointing a sub-agent in each of the counties of Fairfield, Licking and Perry to solicit applications for insurance in the Jefferson Fire Insurance Company, to fix the rates of premium, to receive the premiums and to forward the applications to him at Lancaster. Such appointees would be the agents of the company even if its officers had no actual knowledge of their appointment." And the company was held liable on a contract of insurance made with sub-agent Thompson, though the application for the policy did not come to the hands of the agent Towson until two or three days after the fire because of his absence from his office, and the company then refused to issue the policy. And the general principle that where sub-agents are necessary to the proper transaction and carrying on of the business committed to the agent, the latter has implied authority to appoint sub-agents, is declared in effect in the case of *Bodine v. Insurance Co.*, 51 N. Y. 117, s. c. 10 Am. Rep. 566.

The maxim, *delegatus non potest delegare does* not apply in such case, though the service inherently is of a personal character, because authority to delegate delegated powers is found by implication from the extent and general nature of the business in the original authorization to the general agent: The power delegated to the agent in express terms being such as to require the services of sub-agents carries with it the power to appoint sub-agents whatever the nature of the service in respect of being in itself a personal confidence may be, for a principal may, of course, delegate to an immediate agent clothed with duties involving the exercise of personal skill and judgment, the power of devolving such duties upon sub-agents. It was the absence of bases for the application of this doctrine of implied authorization to appoint sub-agents from the cases of *Waldman v. Insurance Co.*, 91 Ala. 170, and *Insurance Co. v. DeJarnett*, 111 Ala. 248, that distinguishes those cases from the present one: There was in those cases no ground, such as is found here, for saying that although the duties imposed on the agent were of a personal nature, he yet could delegate them because authorized so to do by necessary or fair implication in his own commission—a proposition recognized in the cases cited in *Waldman v. Insurance Co.*—*Johnson v. Cunningham*, 1 Ala. 258; *Insurance Co. v. Heeth*, 49 Ala. 538. And while we adhere to what was there said and repudiate a contrary *dictum* in the case of *Insurance Co. v. Catchings*, 104 Ala. 176, we hold that they do not apply here.

Upon this part of the case our conclusion, therefore, is that it was open to the jury to find that Glenn had authority to appoint McGilvray to make the alleged contract sued on, and hence that the court properly refused the affirmative charge requested by the defendant.

But, as has been indicated in what we have said, the right of the jury to find that Glenn had authority to appoint McGilvray a sub-agent of the defendant to make this alleged contract of insurance with plaintiffs at Enterprise depended upon their reaching the conclusion from all the circumstances of the transaction that Enterprise was "in the vicinity" of Dothan, within

the meaning of Glenn's commission, for there is no pretense either that Glenn actually had any authority or that he was in any way held out by the defendant as having any authority except in Dothan and its vicinity. While there may be a case or two which seem to hold that an agent under such commission may bind his principal beyond the territorial limits of his agency upon the bare consideration that within such limits he is a general agent, we cannot subscribe to the doctrine. To establish it would lead to most astounding results. It would be in effect to deprive a principal of all power to circumscribe the territory to be covered by the agent, to deny him the right to confine the exercise of the delegated authority to a particular town, or county, or State or even country, and an agent for "Dothan and vicinity" might not only exercise his authority in, and in respect of subject-matter situated in, Mobile or Chicago, California, or Maine or Canada or China, but he might appoint sub-agents to monopolize and carry on the principal's business in all those distant places and countries. To the contrary, we hold that under such an appointment the authority of the agent, though he be a general agent in the broadest sense within the prescribed area, cannot be exercised either by himself or through sub-agents outside of the territorial limits set down in his commission; and that in this case the defendant company was not at all bound by the acts of McGilvray unless the locus of the risk which he nominally undertook for the company was within the vicinity of Dothan in the sense the term is used in Glenn's appointment. A part of the court's general charge to the jury to which an exception was reserved is not in harmony with these views. It is as follows: "The certificate of [Glenn's] authority introduced in evidence tends to limit this authority to a particular locality; but this would be in the nature of private instructions to him [Glenn] so far as other parties are concerned, and the limitations contained therein are not such as to defeat the appointment by Mr. Glenn of a sub-agent," meaning, of course and necessarily, a sub-agent beyond the territory covered by

Glenn's agency. There was abundant evidence to lead the jury to the conclusion that the risk assumed to be undertaken by McGilvray purporting to act as sub-agent for defendant under Glenn was clearly outside of and beyond Glenn's territory; and this instruction authorized them to hold the defendant bound by McGilvray's acts although they should find in line with this evidence that he was acting in respect of a matter entirely beyond the limits of the defendant's authorization to Glenn. This part of the court's charge was manifesty erroneous, and most likely very injurious to the defendant, and the giving of it must work a reversal of the judgment.

We discover no error in the other parts of the general charge to which exceptions were reserved nor in the rulings of the court upon charges requested. All these rulings proceed upon the ground that if Enterprise was within Glenn's territory, he had a right to bind the company on risks at that point through a sub-agent, a proposition we have considered and approved.

The fact that Glenn was defendant's *general* agent for Dothan and vicinity was clearly proved by competent evidence. We do not think the court erred in any of its rulings as to the admissibility of the acts and declarations of this general agent which tended to show the limits of the territory embraced in his agency.

Reversed and remanded.

TYSON, J., *dissenting.*—In the absence of all evidence that the insured had knowledge of the limitation in the power of attorney to Glenn restricting his doing of business for his company to a prescribed territory, and in view of the requirement of the statute regulating the manner of doing business by foreign insurance companies to the end of requiring their agents in this State, to be regularly' commissioned and licensed, before the company can make contracts of insurance on property in this State, and when so commissioned and licensed the agent is authorized to make contracts of insurance in Alabama, I think under the facts of this case that the limitations in the power of attorney can

have no effect upon the liability of the defendant upon the contract.—Code, §§ 2575, *et seq.*, especially §§ 2585 and 2614.

It is of no consequence that the commission and license to Glenn required to be issued under these sections of the Code do not appear in the evidence or that the evidence fails to disclose whether or not they had been issued to him. It will be presumed that his company and that he complied with the statutes in the absence of proof to the contrary. Especially will this presumption be indulged since a failure to comply would forfeit to his company the right to do business in this State and impose upon him a personal liability for the amount of the loss sustained.

We have then the case of an agent commissioned by the State of Alabama, under the statute, to do business anywhere in the State for the defendant, with a secret limitation upon his authority as to territorial limits, making a contract of insurance with the assured who had no knowledge of the limitation, but who has the right to presume that the agent is acting under the general authority conferred upon him by his commission from the State of Alabama. On this state of facts, it does not seem to me that there can be a doubt, that the defendant, as matter of law, is liable, if the subagent was authorized to make the contract, a question, rightly held by my brothers, to be one for the determination of the jury.

I do not see how the case, on the point under consideration, can be differentiated upon principle from this: Suppose A., an insurance company, constitute B. his general agent to make insurance contracts in Alabama, which is exhibited to C. with whom a contract of insurance is made, but B. has a secret limitation upon his authority restricting him to one county of which C. is not a resident and in which the property proposed to be insured is not located, which is unknown to C.; could it be doubted that A. was bound by the contract? I think not. This is but the application of an elementary principle which has often been declared and enforced by this court in many cases.—*Piedmont & Ar-*

*lington Life Ins. Co. v. Young,* 58 Ala. 476; *Montgomery & Eufaula R'y Co. v. Kolb,* 73 Ala. 396; *Louisville Coffin Co. v. Stokes,* 78 Ala. 372; *Wheeler v. McGuire,* 88 Ala. 398; *Gibson v. Snow Hardware Co.,* 94 Ala. 346; *Tenn. River Trans. Co. v. Kavanaugh,* 101 Ala. 1; *Montgomery Furniture Co. v. Hardaway,* 104 Ala. 100; *Sweetser v. Shorter,* 123 Ala. 518.

It seems to me that what I have said is sufficient to point out the error into which the court has fallen. It may be that the limitation in the power of attorney is void as being in contravention of the authority conferred by the commission issued to·him under the statute and of the policy declared by the statutes themselves, if not in direct violation of their plain mandate. However, as to how this is, it would be unnecessary to decide, and I merely suggest it without expressing an opinion.