# Dominco *v.* The Prudential Insurance Company of America, Appellant.

*Insurance—Life insurance—Premiums—Premium receipt book—Failure to enter premiums.*

1. A provision in a life insurance policy that "payments to be recognized by the company must be entered at the time of payment in the premium receipt book belonging with this policy," cannot be used to defeat the policy where it appears that the company, through its agent, actually received the premiums and by fraud, accident or mistake they were not entered in the book.

2. In an action on such a policy where the plaintiff shows that the policy in question was on the life of his wife, and that there was also another policy on his wife's life and one on his own life in the same company, and that after a dispute had arisen during his wife's lifetime as to an abandonment of one of the policies, the company had requested the possession of the book so as to adjust the matter, and that the plaintiff had regularly paid the premiums while the company had possession of the book, the plaintiff has sufficiently explained the omission of entries in the receipt book during the time it was out of his possession, and has presented a case which the court is bound to submit to the jury.

Argued Oct. 20, 1911.   Appeal, No. 22, Oct. T., 1911, by defendant, from judgment of C. P. No. 1, Phila. Co., Sept. T., 1908, No. 838, on verdict for plaintiff in case of Pasquale Dominco, Administrator of the Estate of Fannie Dominco, deceased, v. The Prudential Insurance Company of America.   Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ.   Affirmed.

Assumpsit on a policy of life insurance.   Before BRÉGY, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $184.   Defendant appealed.

*Error assigned* was in refusing binding instructions for defendant.

*Frederick J. Shoyer,* with him *Henry Arronson,* for appellant.—The parties to a contract under which payments of money are required have a right to make an agreement as to the manner in which such payments shall be proved: Wood v. Worsley, 2 H. Bl. 574; McNicholas v. Ins. Co., 191 Mass. 304 (77 N. E. Repr. 756); U. S. v. Robeson, 34 U. S. 319; Hutson v. Ins. Co., 50 S. E. Repr. 1000; Lauze v. Life Ins. Co., 74 N. H. 334 (68 Atl. Repr. 31); Langstaff v. Ins. Co., 54 Atl. Repr. 518; Ins. Co. v. Davis, 95 U. S. 425.

It is well settled by a multitude of authorities that as to waiver and estoppel arising during the life of the policy agents have no authority to bind the company where it appears by the terms of the policy that they had no authority to do so: Jenkins v. Ins. Co., 58 Mo. App. 210; Porter v. Ins. Co., 160 Mass. 183 (35 N. E. Repr. 678); Ins. Co. v. Norton, 96 U. S. 234; Northern Assurance Co. v. Bldg. Assn., 183 U. S. 308 (22 Sup. Ct. Repr. 133).

Where there is a limitation in the policy as to the authority of an agent, parol evidence is not admissible to contradict or vary the terms of the policy or to show that an entirely different contract was made with the agent. Our own cases are sufficient to fully sustain this position: Susquehanna Ins. Co. v. Perrine, 7 W. & S. 348; Pottsville Mut. Fire Ins. Co. v. Horan, 11 W. N. C. 198; Pottsville Mut. Fire Ins. Co. v. Fromm, 100 Pa. 347; Susquehanna Ins. Co. v. Swank, 102 Pa. 17; Cooper v. Ins. Co., 50 Pa. 299; Meyer-Burns v. Ins. Co., 189 Pa. 579; Rinker v. Ætna Life Ins. Co., 214 Pa. 608; Scientific American Compiling Department v. Creighton, 32 Pa. Superior Ct. 140; Russell v. Prudential Ins. Co., 176 N. Y. 178 (68 N. E. Repr. 252).

*Joseph R. Embery,* for appellee.—This case is the same as East v. Prudential Ins. Co., 11 N. Y. App. Div. 190 (42 N. Y. Supp. 584).

A similar question arose in the case of McNicholas v.

Prudential Ins. Co., 191 Mass. 304 (77 N. E. Repr. 756).

OPINION BY HEAD, J., March 1, 1912:

On July 16, 1906, the defendant company issued to one Fannie Dominco its policy numbered 22,087,370 insuring her life in the sum of $100. In accordance with the requirements of the policy and the custom of the company it then delivered to her a book in which the agent of the company collecting the weekly premiums was to enter the same with his name or initials showing the receipt of the premium by the company. The book was prepared with a caption of three columns, the first of which contained the number of the policy, the second the name of the insured, and the third the amount of the weekly premium. On November 19, 1906, the company issued a second policy to the same insured numbered 22,517,444 insuring her life in the like amount of $100, each of the policies carrying a weekly premium of ten cents.

The woman whose life was insured by these two policies died in February, 1908. Upon the receipt of proofs of death the company promptly paid the amount of the policy first named but declined to recognize its liability under the second one mentioned. The surviving husband, having first taken out letters of administration on the estate of his wife, brought this action to enforce the payment of the insurance covered by the second policy. The company filed an affidavit of defense, which, along with some general allegations that the insured had not complied with the obligations imposed upon her by the policy, specifically averred as follows: "That no premiums were paid on said policy since March 18, 1907, and according to provision 3 as contained in the third page of the said policy, which was made a part of the contract, to wit: '3.—Policy when void.—This policy shall be void if the said weekly premium shall not be paid according to the terms hereof,' as is more fully set forth in a copy of the said policy set out in and attached to the plaintiff's state-

ment of claim." A plea having been entered, the cause went to trial on the issue thus raised and resulted in a verdict for the plaintiff upon which judgment was entered and the defendant takes this appeal.

The able counsel for the appellant rests his case mainly on two grounds, (1) that the learned trial judge under the evidence should have given a binding direction to the jury to render a verdict for the defendant, or, failing in this, should have subsequently granted a motion for judgment non obstante veredicto; (2) that it was error under the provisions of the policy for the trial judge to have received evidence of the plaintiff and his witnesses tending to show, that at a period of time before the death of the insured, the receipt book, at the request of the company, had been surrendered for the purpose of correcting some mistake and that during that period he had paid the proper premiums to the collecting agent, taking loose receipts therefor, which, upon the return of the book, were delivered to the agent.

1. It must be apparent, we think, that if the plaintiff, by himself and his witnesses, produced oral testimony tending to show that the policy on which the suit was brought had not been permitted to lapse for nonpayment of the premium, either at the date set up in the affidavit of defense or at any other time prior to the death of the insured, the learned trial judge could not have done otherwise than submit the question of fact to the jury under proper instructions. It is not for us to discuss or consider the credibility of the witnesses nor to determine on which side of the issue raised the preponderance of the testimony existed. To do this would be to invade what every one concedes is the exclusive province of the jury.

An examination of the receipt book which was offered in evidence first of all shows, in so far as the book speaks for itself, that all of the moneys therein receipted were on account of the policies on the life of Fannie Dominco and on no other account. Its caption contained her name twice and no other name; the numbers of her two policies and

no reference to any other, From the date of the issue of the first policy down to December 3, 1906, it shows a regular weekly charge against her of ten cents, the premium on her first policy and the payment of these sums. On the day last mentioned, which was shortly after the issue of the second policy, the amount was increased to twenty cents, and from that date down to December 30, 1907, months after the time when the company asserts her second policy lapsed, it shows a continuous weekly charge of twenty cents, the premium on two policies, and the payment of those sums. Beginning with January, 1908, the book shows that the weekly charge and payment fell to ten cents. The testimony furnishes no explanation of anything happening at that time, from the standpoint of the company, which would warrant the conclusion that the second policy had been then abandoned. There was also evidence that at some time subsequent to the death of the insured an attempt had been made to mutilate the receipt book by obliterating from the caption the record of the second policy issued to the insured. Apart from any inferences that may thus be drawn from an examination of the book itself, it further appears that the present plaintiff had at one time taken out a policy on his own life. Presumably there was issued to him at that time a receipt book of the form and character indicated, setting forth his name as the insured, the number of his policy, and the amount of the weekly premium, and containing the regular weekly charges and receipts for such premium as he had paid. He testifies that at or about the time his wife had taken the second policy he concluded to abandon his, gave notice of his intention to the company, and ceased paying the premiums thereon. What became of his book the testimony fails to show. Neither he nor the agents of the company admit any knowledge on the subject. He further says that there was some dispute between him and the agents as to whether the abandoned policy was the one on his life or the second one on that of his wife, and that for the purpose of clearing up the situation and making the

various records correspond with the facts, he was requested to deliver up his book to the collecting agent and did so on January 5, 1908. This was but a short time before the death of his wife and while she was in a precarious condition of health. He testifies himself and proves by other witnesses that he made payments to the agent while the latter had possession of his book and that these were evidenced by loose receipts, his last payment being eighty cents which paid the premium, as he and they declare, on the two policies on the life of his wife to a period beyond the date of her death. Under this state of the evidence we are unable to see how the learned trial judge could have given a binding direction to the jury to find for the defendant or could have afterwards entered judgment for the latter non obstante veredicto. The assignments of error complaining of the refusal of the court to do either or both must be dismissed.

2. The policies issued by the defendant company contained a provision in respect to the payment of premiums as follows: "Payments to be recognized by the company must be entered at the time of payment in the premium receipt book belonging with this policy." By reason of this provision it is contended that even if the plaintiff were abundantly able to satisfy the jury by parol testimony that the premiums had in fact been paid, such evidence could not avail if such payments were not noted in the premium receipt book. In other words, the failure of the book to exhibit the evidence of the payments alleged is conclusive upon the plaintiff and estops him from showing otherwise the fact of payment. We cannot accept this conclusion as a sound one. It was the payment of the premiums in fact that kept the policy in force. The evidence of such payment in the receipt book, as provided for in the policy, would be of the utmost value to the plaintiff and of course a reasonable measure of protection to the company. But if the latter, through its agents, actually received the premiums and by fraud, accident, or mistake, they were not entered in the book, it could hardly

be contended that the company could receive and retain the premiums and repudiate its liability on the policy. In East v. Prudential Insurance Company of America, 11 N. Y. App. Div. 190, where a similar question arose, the court, after reciting the same stipulation of the policy which we have already quoted, said: "The payment was the essential act to be performed by the policy holder. The entry in the book was in the nature of a receipt to be given by the defendant's agent, and while it was contemplated by the plaintiff that this duty would be performed by him and the book furnish the evidence of payments, the omission of the agent to make entries in it of payments actually made could not prejudice the plaintiff otherwise than as evidence which it was desirable for her to have in support of the fact that they had been made. It would be quite unreasonable to permit the defendant to effectually assert a forfeiture arising solely from the nonobservance of a condition by its agent who may thus have failed to perform his duty." We have already indicated that the provision in the policy was in our judgment a reasonable one for the protection of the company, and one claiming under a policy should not be permitted to set up payments in some other way than that provided in the policy without having first shown some sufficient reason why the premiums alleged to have been paid were not entered in the book at the time.

But in this case we think the plaintiff, if his testimony be credible, had discharged that burden. There is evidence to show that some confusion existed between him and the collecting agents as to which one of the three policies originally issued it was intended to abandon. He testifies distinctly, and in this he is corroborated, that there was a time in January, 1908, when the book was not in his possession, having been turned over by him to the agent of the company. True, the latter denies having either requested its surrender or having at any time received it. This, however, raised but an issue of fact for the jury. Certainly, if the plaintiff could have produced loose re-

ceipts, signed by the regular agent of the company evidencing the payment of the premiums necessary to keep the policy in suit alive, the defendant company would not be permitted to escape liability because such payments under such circumstances were not entered by the agent in the receipt book. It is again true that the plaintiff, when, as he alleges, the book was finally returned to him and the loose receipts demanded, should have seen to it before surrendering the latter that they were regularly entered in the receipt book. He was, however, an illiterate foreigner, unable to read or write the English language, and testified that he did not discover that the book showed that during the month of January, 1908, immediately preceding his wife's death, the premiums had been reduced from twenty cents per week to ten cents.

We are therefore of the opinion that the learned trial court could not have withdrawn from the consideration of the jury the evidence of the payment of premiums on the policy in suit which were evidenced by loose receipts because the receipt book was not at that time in the possession of the insured or her husband but in the possession of the company. This being so, the several points of the defendant on this branch of the case were properly refused and the remaining assignments of error are dismissed.

Judgment affirmed.