(134 So. 881)

## WESTCHESTER FIRE INS. CO. OF NEW YORK v. GREEN.

### 5 Div. 82.

Supreme Court of Alabama.

May 21, 1931.

Denson & Denson, of Opelika, for appellant.

J. W. Kelley, of Phenix City, for appellee.

FOSTER, J.

The former appeal in this case is reported in 221 Ala. 344, 128 So. 436. On the next trial defendant filed additional pleas, and to those numbered from 2 to 8, inclusive, plaintiff refiled his replication which was treated on the former appeal. Defendant urges a reconsideration by us of the sufficiency of that replication. No new question is presented by reason of the additional pleas, nor the additional grounds of demurrer to the replication. But it is said that on such appeal the court at the outset stated the proposition urged in brief to be that the replication is "defective for that it failed to show the agent's authority to waive the stipulation as to plaintiff's title," whereas

they now urge that the replication was then and is now subject to that ground of demurrer which points out the fact that the disclosures set out in the replication were made to a person other than defendant's agent, and that such person is not alleged to have been defendant's agent, but rather a subagent.

■ We agree with appellant that, on this appeal, this court should and will reconsider the question and be governed by what it now concludes to be the law. Section 10287, Code; Anniston v. Hillman, 220 Ala. 505, 126 So. 169. Upon further consideration of the question then treated, we wish merely to say that we now think it was correctly and fully discussed, and that we need add nothing except to cite as further authority in support of it Western Assurance Co. v. Stoddard, 88 Ala. 606, 7 So. 379; Ætna Fire Ins. Co. v. Kennedy, 161 Ala. 600, 50 So. 73, 135 Am. St. Rep. 160.

■ ■ But, in so far as that opinion did not deal with the aspect of that replication now urged, we feel that it should be duly considered and treated. If the replication had stated merely that the notice was given to the alleged subagent, and did not allege notice to C. L. Mullin & Co., the agents, there would be more plausibility to the claim that it was insufficient in this respect. While it does state that plaintiff's wife "fully advised S. J. Gilmore, then acting for C. L. Mullen and Company as such agents," and does not allege that Gilmore was duly authorized by Mullin & Co. as their subagents, and facts which show the right of the agents to appoint a subagent with authority in this respect, or that he was acting for such agents by any authority from defendant, it also states that "with full knowledge of the true condition of plaintiff's possession, ownership and title the said C. L. Mullin and Company issued to plaintiff the said policy of insurance sued upon, accepted the premium thereupon and delivered the same to plaintiff." It was doubtless by virtue of such allegations, as well as the contentions in brief referred to in the opinion which led the court to discuss the sufficiency of the allegation of the authority of C. L. Mullin & Co. without reference to the allegations relating to Gilmore. For the allegation of notice to Gilmore acting for the agents, coupled with the further allegation that the agents had full knowledge, etc., is sufficient to bring home to the agents such notice, either directly to them, though not so expressly stated, or through a subagent with due authority, though such authority is not so stated. An allegation of full knowledge by the agents may be proven by either actual or constructive notice. Ala. Fuel & Iron Co. v. Denson, 208 Ala. 337, 94 So. 311.

We now think that such state of allegation in the replication justified the interpretation placed upon it on former appeal.

But now on this appeal there is here presented, not only the sufficiency of the replication, but also the proof in support of it. Does the proof show notice to Mullin & Co. of the true state of the title of plaintiff, as alleged in the replication. It only shows notice to Gilmore, and so we are now confronted with the question of fact—whether Gilmore was duly authorized by the agents of defendant so that notice to him was constructive notice to the agents so as to bind defendant. The power of fire insurance agents to appoint a subagent is thus expressed, after an elaborate discussion, in our case of Ins. Co. of N. A. v. Thornton, 130 Ala. 222, page 233, 30 So. 614, 617, 55 L. R. A. 547, 89 Am. St. Rep. 30: "The maxim, 'Delegatus non potest delegare,' does not apply in such case, though the service inherently is of a personal character, because authority to delegate delegated powers is found by implication from the extent and general nature of the business in the original authorization to the general agent. The power delegated to the agent, in express terms, being such as to require the services of subagents, carries with it the power to appoint subagents whatever the nature of the service in respect of being in itself a personal confidence may be; for a principal may, of course, delegate to an immediate agent, clothed with duties involving the exercise of personal skill and judgment, the power of devolving such duties upon subagents. It was the absence of bases for the application of this doctrine of implied authorization to appoint subagents from the cases of Waldman v. Insurance Co., 91 Ala. 170, 8 So. 666, 24 Am. St. Rep. 883, and Insurance Co. v. De Jarnett, 111 Ala. 248, 19 So. 995, that distinguishes those cases from the present one. There was in those cases no ground, such as is found here, for saying that, although the duties imposed on the agent were of a personal nature, he yet could delegate them because authorized so to do by necessary or fair implication in his own commission (a proposition recognized in the cases cited in Waldman v. Insurance Co.—Johnson v. Cunningham, 1 Ala. 258; Insurance Co. v. Huth, 49 Ala. 538); and while we adhere to what was there said, and repudiate a contrary dictum in the case of Insurance Co. v. Catchings, 104 Ala. 176, 16 So. 46, we hold that they do not apply here."

Notwithstanding such criticism of the Catchings Case, 104 Ala. 176, 16 So. 46, shown in the above expression, it was referred to in a later case as authority for the rule "that the powers usually conferred on agents representing insurance companies are not of such personal nature, evincing personal trust and confidence only, as to invoke the maxim, 'Delegatus, non potest delegare.' " Supreme Lodge, K. of P., v. Connelly, 185 Ala. 301, 305, 64 So. 362, 363. Citing the last above author-

ity it was again in a later case said that whether such an agent "was authorized to delegate his authority to another to act for him, and, in turn, for his principal, was due to be submitted to the jury." L. E. M. L. & A. Ins. Ass'n v. Hughes, 202 Ala. 466, 468, 80 So. 850, 352.

Reference has often been made to the fact that foreign fire insurance companies are permitted to do business in this state only through agents. Sections 8353, 8379, Code; Yorkshire Ins. Co. v. Gazis, 219 Ala. 96, 121 So. 84; Green v. Westchester Fire Ins. Co., 221 Ala. 344, 128 So. 436, 438.

In this connection we observe that by the Act of 1927, page 34, it is provided that "any person who solicits insurance on behalf of any insurance company or for the agent of an insurance company, or [etc.], is deemed an insurance agent." This is the first act of the Legislature which so designates one acting for an agent.

■ From all the foregoing, we are clear that there are circumstances when a general fire insurance agent may delegate to subagents the power to make contracts of fire insurance binding upon the insurance company.

■ There is evidence in this case that Gilmore solicited the application for the policy on which suit was brought; that the premium was paid to Gilmore at the office of C. L. Mullin & Co., but there was no transaction with C. L. Mullin doing business as C. L. Mullin & Co. in connection with the issuance of the policy; though there was evidence that he was in the office on some occasions when she made payment on the premium, and that Gilmore seemed to have charge. The policy was for one year from February 14, 1926, and signed in the name of C. L. Mullin & Co., agent. There was no denial of its due execution. Gilmore testified that he was employed by C. L. Mullin & Co., and that C. L. Mullin owned and operated the business; that the policy was a renewal of one written the year before; that he took the policy and delivered it to plaintiff's wife; that she made four installment payments of the premium to him, all at her store, and made none at the office of Mullin & Co.; that he and Mullin both solicited insurance, and that he wrote this policy and with a typewriter signed the name of C. L. Mullin & Co. to it, and put the poster on the back of the policy; and had no conversation with Mullin about it; the premium was remitted to the company. After the fire there was correspondence with an adjuster. No claim has been made of want of authority of C. L. Mullin & Co. to execute the contract or that it was not duly executed. But there was no direct evidence in the record showing his authority.

From all the foregoing circumstances we think it was a question for the jury whether

Gilmore had authority binding on defendant to solicit and execute contracts of insurance in the name of defendant by C. L. Mullin &. Co., and to sign and issue policies of insurance. It was said on former appeal, quoting from Yorkshire, etc., Co. v. Gazis, supra (last appeal of that case) that under such circumstances he "must be regarded quoad hoc as the general agent of the company.". The same reasoning, we think, applies to an agent of the agent, for as to that transaction his conduct is to be weighed as though he were a primary agent. We think that the company cannot get business on the faith of an agreement made by a subagent, and then write up a different contract with any more effectuation than if the alleged agent were not a subagent but the primary agent.

■■ The question of whether the affirmative charge was due defendant on account of a failure to prove the allegations of the replication is not controlled of course by the fact that plaintiff did not by the arrangement which he made with his father acquire the title to the property, or whether it was void under the statute of frauds. For if thereby he acquired the title, there was no occasion for the replication. Considering the strict legal title, he was a tenant in common·of the property, being one of his father's heirs, and as such had an insurable interest. But he did not undertake to insure that interest alone, but undertook to insure it to the extent of a full title. This court has adopted the majority view that "insurance taken by one with an insurable interest in the property, who pays the premiums thereon out of his own funds, is a personal indemnity to the insured." Bell v. Barefield, 219 Ala. 319, 122 So. 318, 319.

■ Now if the insurer be truly informed of the nature of the title of the insured and enters into a contract of insurance as for an absolute title, receiving full premium for the entire value of the property, he cannot deny liability nor even reduce the recovery on account of such partial interest. In one of the cases it is said that: "If, having such knowledge or notice [that is, of the fact that insured had only a partial interest], he [that is, the insurance agent] placed the insurance as upon an absolute title, and he demanded and received the amount of premium which would be due and demandable for insurance of the entire ownership of the property, both reason and authority demand that the loss shall be compensated, as if the assured had held a title in fee." Western Assurance Co. v. Stoddard, 88 Ala. 606, 7 So. 379, 380; 26 Corpus Juris 358, § 459.

So that in respect to the nature of plaintiff's title, the two questions are: (1) Did he have in fact an insurable interest, and (2) did he disclose the nature of his interest and claim to the agent of defendant, who with

such notice issued the policy and collected the premium, and that such nature of claim is substantially as stated in the replication?

The evidence does not show that all matters detailed in the replication were communicated to Gilmore, nor that they occurred just as there stated. As the case must be reversed for other reasons, it is not necessary to determine whether there was proof of its substantial averments in such form as properly to submit the replication to the jury. On another trial the averments should conform more closely to the proof.

■ Plea Z, to which demurrer was sustained, alleges a breach of the agreement in the policy that it should be void if the interest of the insured be other than unconditional and sole ownership, and that such was not the fact, in that J. D. Green had executed a mortgage to one J. T. Cooper, which was then unsatisfied. The existence of a mortgage before foreclosure has been quite uniformly held not to be a breach of the condition stated in this plea. 26 Corpus Juris, 177; 3 Cooley's Briefs on Ins. pp. 2191, et seq.; Royal Ins. Co. v. Bailey (C. C. A.) 35 F.(2d) 916; Ellis v. Ins. Co. of N. A. (C. C.) 32 F. 646. So that defendant was not prejudiced by the judgment sustaining demurrer to this plea.

■ While a mortgage conveys the legal title to the mortgagee, the mortgagor is regarded, as against all but the mortgagee, as the owner and holder of the title. We have shown that he is so regarded in connection with a fire insurance policy conditioned upon his unconditional and sole ownership. But a mortgagee is not such an owner within the terms of a policy requiring ownership in fee simple. 26 Corpus Juris, 178; 3 Cooley's Briefs on Ins. p. 2193.

■ While charge No. 1 does not assert that he is the sole and unconditional owner or has a fee-simple title, it does assert that he is the owner of the legal title. Several pleas set up provisions avoiding liability if he is not the "owner" or "owner in fee simple." While for certain purposes he has the strict legal title, it is defeasible and not in fee simple. 21 Corpus Juris, 918–919. The correctness of a charge should be construed in the light of the issues in the case. In this case the mortgagee is not such owner as that required by the policy, though he might be regarded as the owner when the issues and parties are different. Our judgment is that charge No. 1 given for plaintiff was not a correct statement of the ownership by a mortgagee within the meaning of a provision in a policy of insurance such as alleged and proven in this case. The giving of that charge was probably highly prejudicial to the point of inducing the jury to conclude that plaintiff as an assignee of the mortgagee was the owner and entitled to protection as such, regardless of proof of the matters averred in the replication.

■ In view of our conclusion that the judgment should be reversed, it is not necessary to determine whether there was error in overruling the motion for a new trial on account of the excessiveness of the damages based upon insufficient proof of the amount of such damages. The "proof of loss" does not supply such evidence on the trial. 26 Corpus Juris, 537; 7 Cooley's Briefs on Ins. 5971 et seq. On another trial this question need not arise.

■ Plea A, on which issue was joined without a demurrer, was against the further maintenance of the suit, because proof of loss was not furnished within sixty days after the fire. The provision for such proof is not made a condition of forfeiture, nor is other penalty prescribed in the policy for a failure to comply with it. Under such a stipulation its breach has the effect merely to postpone the time of bringing suit until such proof is made. 26 C. J. 373, 374; 14 R. C. L. 1328, § 501; 7 Cooley's Briefs on Ins. pp. 5766, 5767; Taber v. Royal Ins. Co., 124 Ala. 681, 691, 26 So. 252; Royal Exch. Assurance Co. v. Almon, 206 Ala. 45, 89 So. 76.

■ The nature of a plea is determined by its substantive allegations and its prayer, but not its form. § 9472, Code.

■ Considering the substance of the plea as well as its prayer, it is apparent that it does not undertake to plead matter in bar. The prayer is against further maintenance, and the substance goes only to the time of the institution of the suit. It is therefore a plea in abatement. Other pleas filed at the same time were in bar. When this is done, plaintiff may either move to strike the plea in abatement or treat it as a nullity. Hart v. Turk, 15 Ala. 675; Brown v. Powell, 45 Ala. 149; Strouse v. Leipf, 101 Ala. 433, 14 So. 667, 23 L. R. A. 622, 46 Am. St. Rep. 122; Ex parte Dunlap, 209 Ala. 453, 96 So. 441; 1 C. J. 268.

When pleadings are thus filed plaintiff is not prejudiced by not seeking to rid the case of the plea in abatement. He may simply treat it as a nullity. We think, therefore, that, if we should conclude that the proofs furnished within the sixty days were not sufficient, defendant is not due the affirmative charge on that issue.

Likewise it is said in Taber v. Royal Ins. Co., supra, page 691 of 124 Ala., 26 So. 252, 260, that: "The omission to give such notice [that is, immediate notice of loss] was not by the policy an express term of forfeiture, and, without that, the law would be slow to apply any strictness of construction to work a forfeiture, in the absence of any allegation or possibility of damage."

The evidence shows that "immediately after the fire" plaintiff went to the office of Mullin & Co. and asked Gilmore, who was there in charge, for a blank on which to make proof. And he told plaintiff he would have to send to Atlanta to get proof, and afterwards furnished the blank, which plaintiff used and filled it out and turned it over to Gilmore. Plaintiff later had a letter from insurance adjusters making objections to its sufficiency as to detail. Plaintiff then procured another blank from the adjusters, filled it out and sent it to the adjusters, and heard no further complaint. The first proof was within sixty days, the later proof was after sixty days. There is no claim of damage for delay. The issue of immediate notice set up in plea B was properly left to the jury, even though it be treated as a plea in bar. Some courts consider it in the same category in this respect as pleas setting up failure to furnish proof. 26 Corpus Juris, 373.

For the giving of charge No. 1 the judgment is reversed, and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.