6 So.2d 412
**LIBERTY NAT. LIFE INS. CO. v. HOUSE.**
**6 Div. 981.**

Supreme Court of Alabama.
Feb. 12, 1942.

Foster, Rice, Madison & Rosenfeld, of Tuscaloosa, for appellant.

J. W. Mustin, Jr., of Tuscaloosa, for appellee.

FOSTER, Justice.

The controlling question of law in this case is whether or not it is sufficient to make payment of weekly premium sums to

an agent of defendant in an industrial policy when such agent has authority to make collections of that sort, without an entry of them on the premium receipt book belonging with the policy, under a clause in the policy which provides that "all premiums are payable at the home office of the company weekly in advance, but may be paid to an authorized representative of the company, provided that such payment must be entered at the time in the premium receipt book belonging with this policy." There was also a grace period of four weeks for the payment of every premium after the first, during which time the policy remains in force subject to its terms. The policy was on the life of Lela House, naming plaintiff, her husband, as the beneficiary.

There was evidence of a certain payment to an agent, without an entry in the premium receipt book, and without the money being remitted by him to the home office. It was paid by plaintiff's brother Barney House and occurred the last part of January, 1940. That payment would have carried the policy four weeks, and until about February 28th, and then there were four weeks of grace, and within that time plaintiff paid to the agent's wife $3.60, and she gave him a receipt for it, and on plaintiff presenting in a short time thereafter the receipt to him, he entered on the premium book $3.30. It was agreed that the agent received this money from his wife, but did not remit it to the home office. Plaintiff testified further about this as follows with reference to the conduct of Ragland, the agent, while plaintiff's wife was in the hospital: "He came to the hospital to see me. I was in the room with my wife, and a nurse came and said a man wanted to see me, and it was Kelly Ragland. He said: 'I lacked 30¢ of marking your card in good standing.' I said: 'We noticed that.' He said: 'Let me have your card,' and I thought the man was straight and honest. He said: 'You have a cash policy, and if your wife should pass out, you might need this $3.60. We will keep the insurance paid up and we will take it out of the cash policy', and he laid the money on my knee, and I said: 'No, I paid it on the policy and I want it to go that way.' He laid it on the seat, and I turned around and when I did, he slipped it in my pocket, and he left." And by a trick substituted premium books.

█ This was not disputed, and of course its credibility was for the jury. Ragland did not testify. So that the payment alleged to have been made January 29th by the brother of plaintiff was not entered on the receipt book, and that of March 18th was entered $3.30, according to the evidence. The brother did not have the book, and testified that Ragland told him that he would give him a receipt and it would do as good; that he gave the receipt to plaintiff. The plaintiff testified: "I have looked good for the receipt and have not been able to find it. The receipt showed that my brother paid 60¢ on my wife's policy, $1.20 for both of us. I think that was about the end of January."

The legal question first mentioned seems to have had no consideration by the courts in this State, but the Court of Appeals called attention to it, leaving it undecided in Independent Life Ins. Co. v. Woods, 23 Ala.App. 590, 129 So. 487.

█ But the Superior Court of Pennsylvania and the Appellate Division of the Supreme Court of New York have treated the subject. In Dominco v. Prudential Ins. Co., 49 Pa.Super. 156, it is said: "The evidence of such payment in the receipt book, as provided for in the policy, would be of the utmost value to the plaintiff and of course a reasonable measure of protection to the company. But if the latter, through its agents, actually received the premiums and by fraud, accident, or mistake, they were not entered in the book, it could hardly be contended that the company could receive and retain the premiums and repudiate its liability on the policy. In East v. Prudential Ins. Co. of America, 11 App. Div. 190 [42 N.Y.S. 584], where a similar question arose, the court, after reciting the same stipulation of the policy which we have already quoted, said: 'The payment was the essential act to be performed by the policy holder. The entry in the book was in the nature of a receipt to be given by the defendant's agent, and while it was contemplated by the plaintiff that this duty would be performed by him and the book furnish the evidence of payments, the omission of the agent to make entries in it of payments actually made could not prejudice the plaintiff otherwise than as evidence which it was desirable for her to have in support of the fact that they had been made. It would be quite unreasonable to permit the defendant to effectually assert a forfeiture arising solely from the non-

324

observance of a condition by its agent who may thus have failed to perform his duty.' We have already indicated that the provision in the policy was in our judgment a reasonable one for the protection of the company, and one claiming under a policy should not be permitted to set up payments in some other way than that provided in the policy without having first shown some sufficient reason why the premiums alleged to have been paid were not entered in the book at the time."

We do not think defendant was entitled to the affirmative charge. If the jury finds that defendant's agent Ragland, by falsely representing to Barney House, that a receipt would be as good as an entry of payment on the book, and thereby induced such a belief on the part of Barney House, and, through him, the plaintiff also, and also if later plaintiff carried to Ragland the book for an entry of the $3.60 paid on or about March 18th, and with knowledge of the prior payment and that it had not been entered on the book and of his statement to Barney House that a receipt would do as well, and if he then neglected to make entry of such payment of sixty cents on January 29th, the question thereby became one for the jury as to whether the failure to comply with the policy provision was on account of the fraud, accident or mistake of defendant's agent, and whether a sufficient reason was shown why the entry was not made in the book.

We do not think there is reversible error shown in any of the assignments. It is not important to discuss them.

The judgment is affirmed.

Affirmed.

GARDNER, C. J., and BOULDIN and LIVINGSTON, JJ., concur.