45 So.2d 16
### FINCH v. LIFE & CASUALTY INS. CO. OF TENNESSEE.

I Div. 355.

Supreme Court of Alabama.

Feb. 9, 1950.

Rehearing Denied March 9, 1950.

Caffey, Gallalee & Caffey and Douglas Stanard, of Mobile, for appellant.

Outlaw, Seale & Kilborn, of Mobile, for appellee.

FOSTER, Justice.

This is a suit by appellant on an industrial insurance policy, in which she was the beneficiary on the life of her husband. The insurance had been carried since December 1941. The death of insured occurred on July 2, 1943. This suit was filed on January 21, 1947.

The question is whether or not the policy had lapsed at the time of his death on account of nonpayment of dues. The policy provided for a grace period of four calendar weeks and that after the expiration of said grace period the policy should lapse and the company's liability should cease unless the policy is reinstated according to its terms. It also contained a provision that the agents are not authorized to make, alter or discharge contracts or waive forfeitures or any provisions or terms of the policy, and have no authority to receive a premium more than four weeks after the date on which it is due unless receipt for same is made in the premium receipt book. That all premiums are payable at the home office of the company (Nashville, Tennessee), but may be

paid to an authorized representative of the company, that such payment to be binding on the company should be entered at the time in the premium receipt book provided by the company for entry of all premiums payable on the policy, and if the premiums are not called for when due it shall be the duty of the policyholder to bring or send said premiums to the home office of the company or to some of its district offices.

In accordance with the requirements of the policy the receipt book mentioned was given to the insured and a collector called for payment of the premiums with much regularity and entered the payments on the receipt book, together with the date and amount paid. The receipt book shows that the amount due on April 19, 1943 was paid on the 5th day of May, 1943. The amounts payable on April 26th, May 3d, 10th and 17th were not paid until June 2, 1943. That showed those payments were made after the expiration of the grace period and at a time when the policy lapsed by reason of the failure to pay the premiums for four consecutive weeks. But the payment on June 2, 1943, was entered on the receipt book, and no question is here raised as to the effectiveness thereof to keep the policy in force until May 17, 1943. There is no other entry of payment shown in the premium receipt book after May 17, 1943. The next effort to pay the premium was on June 23, 1943, which is more than four weeks after May 17th, so that at the time of the effort to pay on June 23, 1943, another four weeks period of grace had expired. The effort which was made to pay the premium at that time consisted in the fact that the plaintiff went with her husband to the defendant's office in Mobile and there had a transaction with the young woman in the office and paid her five dollars. The agent had not been out to her house to make collection. If that five dollars be treated as a payment of premiums it would be sufficient to carry the policy in force until the death of insured on July 2, 1943. So the question in this case turns upon the effect of the payment of the five dollars on June 23, 1943. A receipt was given the plaintiff by the young woman in the office, which is in evidence. It recites that the amount shall be held in suspense until there is an application for a new policy, or reinstatement of the old policy, and there shall be no liability on the part of the company unless a new policy is delivered while the applicant is in good health, or the old policy reinstated and the money credited to the premium receipt book. At the bottom of the receipt there was a memorandum to the effect that if application for reinstatement of the old policy is denied, the money would be returned. The defendant did not offer to return the money until after the death of insured. Plaintiff testified she read that receipt when she reached home with it after the transaction with the young woman in the office. The insured died on July 2, 1943, from an accidental cause, and there was no formal reinstatement of the old policy nor had there been an application for such reinstatement, and the five dollars paid had not been credited on the premium receipt book. The plaintiff testified to the conversation she had with the young woman in the office to the effect that "she told me to keep the receipt that it was as good as marked in the book. That when the agent did come out to my house he would mark it in the book." She also testified that on other occasions she paid premium money to the company without having the receipt book and later the amount was entered in the premium receipt book. Prior to the testimony given as to this conversation with the young woman in the office, this question was propounded to the plaintiff, "What did that young lady tell you at the time she gave you that receipt for your five dollars?" The defendant objected because she was not shown to be an agent of the company authorized to make any waiver. The court overruled the objection and defendant reserved an exception to the ruling of the court. There was a verdict and judgment for the plaintiff, and on motion of defendant the court granted a new trial.

This appeal is prosecuted from the ruling of the court in granting a new trial.

The record does not expressly show what kind of office the defendant maintained in Mobile. But it does appear that the defendant had a district office in Mobile since the premium receipt book, above mentioned, has printed on it "If agent does not call to collect premiums, payment should be sent to District Office: Life & Casualty Ins. Co., 614-617 First National Bank, T. W. Roberts, Manager, Mobile, Alabama." The jury could infer that this was the office to which plaintiff went and where the five dollars were paid. The question then is whether the young woman in the office, who received the money, had authority to make representations to plaintiff that the receipt was as good as an entry in the receipt book. If she had such authority, it is for the jury to interpret its meaning to determine whether the plaintiff had the right to rely upon that as a reinstatement of the policy, in view of a similar payment on June 2, 1943 to a collector at a time when the policy had lapsed and the grace period had expired and no requirement was made for an application in regular form to reinstate the policy.

We had occasion to consider a similar question in the case of Liberty National Life Ins. Co. v. House, 242 Ala. 322, 6 So.2d 412, in which we expressed the view that a collector may so conduct himself with respect to such policy as to estop the insurance company to claim that the policy either has lapsed or has not been reinstated. In that case the representation was made by the defendant's collection agent who was authorized to make collection of premiums and enter the amount in the receipt book under the provisions of a policy similar to that in the instant case. Here the young woman in the office is not shown to be one who is authorized to receive premiums and enter them on the receipt book; and there was no evidence as to what her authority was or appeared to be.

■ The general rule is that agents of an insurance company issuing such policies are not authorized to waive forfeitures or bind the insurance company by estoppel. If the company authorizes an agent to make collection of a renewal premium there may be implied authority to the agent to grant an extension of time of payment and thereby waive the forfeiture resulting from the failure to pay at the time the premium became due. United States Life Ins. Co. v. Lesser, 126 Ala. 568, 28 So. 646; First National Life Ins. Co. v. Gross, 25 Ala.App. 51, 140 So. 628; 45 Corpus Juris Secundum, Insurance, § 685, page 634.

■ But if an insurance agent is only authorized to solicit and take applications for insurance and deliver the policy and receipt the premium, he has no implied authority to waive such a condition in the policy. Alabama State Mutual Assr. Co. v. Long Clothing & Shoe Co., 123 Ala. 667, 26 So. 655; Waldman v. North British & Mercantile Ins. Co., 91 Ala. 170, 8 So. 666, 24 Am.St.Rep. 883; New York Life Ins. Co. v. Crumpton, 230 Ala. 147, 160 So. 332; Indemnity Co. of America v. Bollas, 223 Ala. 239, 135 So. 174; Springfield Fire & Marine Ins. Co. v. DeJarnett, 111 Ala. 248, 19 So. 995.

■ But there is another well-established principle of law which was given effect in this State in the case of Insurance Company of North America v. Thornton, 130 Ala. 222, 30 So. 614, 55 L.R.A. 547, 89 Am.St.Rep. 30, with respect to the right of a general agent of an insurance company to appoint subagents with authority to make such contracts for the company as the general agent could do. The question of the power of such subagent seems to depend upon the inquiry as to whether or not the general nature of the agency was such as to require the services of subagents to carry on its business and, if so, such business can be conducted by subagents, since it must be understood that subagents being necessary for that purpose, the principal is bound to have known that subagents would be appointed to perform such service. It distinguished the cases

of Waldman v. North British & Mercantile Ins. Co., supra, and Springfield Fire & Marine Ins. Co. v. DeJarnett, supra, from the situation there under consideration and repudiated a dictum to a contrary effect in the case of Syndicate Ins. Co. v. Catchings, 104 Ala. 176, 16 So. 46. The same effect are Westchester Fire Ins. Co. of New York v. Green, 223 Ala. 121, 134 So. 881, and Globe & Rutgers Fire Ins. Co. of New York v. Eureka, 227 Ala. 667, 151 So. 827; Section 69, Title 9, Code.

But a mere clerk or employee of the agent who has no real or apparent authority to do so cannot bind the company by waiver or estoppel. 45 Corpus Juris Secundum, Insurance, § 686, page 635, note 26; Royal Ins. Co. v. Eggleston, 19 Ala.App. 638, 99 So. 828.

There is mention in the policy of a district office at which a premium may be paid, and from the indorsement on the receipt book the jury would have a right to infer there was a district office of defendant in Mobile where premiums might be paid. If there is such district office, the defendant would be bound by the principle of waiver or estoppel resulting from what occurred in that office by its authority. But there is nothing in the record to show that the young woman in the office was authorized to do any act which would work a waiver or estoppel, or that the condition of the business in the district office was such as to require that it be transacted by subagents or that the young woman was a subagent employed under the circumstances mentioned in the Thornton case, supra. For aught appearing, she was no more than a mere clerk or employee to carry out instructions, and had no apparent authority to do more. Her statement to appellant was therefore not shown to be binding on appellee. There was no other evidence to that effect. So that it was not sufficient to create a waiver or estoppel against appellee, and the verdict was therefore not supported by the evidence.

It follows that the action of the trial court in granting the motion for a new trial was without error.

Affirmed.

LAWSON, SIMPSON and STAKELY, JJ., concur.