235 So.2d 818

CONSOLIDATED UNDERWRITERS IN-SURANCE COMPANY, a Corporation,

v.

Jimmy D. LANDERS et al.

CONSOLIDATED UNDERWRITERS IN-SURANCE COMPANY, a Corporation,

v.

Ralph MASTERSON et al.

6 Div. 768, 768–A.

Supreme Court of Alabama.

May 15, 1970.

Baker, McDaniel, Hall & Parsons, Birmingham, and John Self, Hamilton, for appellant.

Bill Fite, Hamilton, for appellees.

**BLOODWORTH, Justice.**

This is an appeal from final decrees in two declaratory judgment actions (consolidated by agreement for trial) declaring that an automobile liability insurance policy issued by appellant Consolidated Underwriters Insurance Company to appellee Sanders Buckner Williams was in full force and effect on March 9, 1968, the date of an automobile accident involving Williams and the other appellees as a consequence of which accident the other appellees filed damage suits against Williams.

The question presented is whether the insurance policy, which on its face expired March 2, 1968, had been renewed prior to March 9, 1968, the date of the automobile accident. We conclude that there is sufficient evidence to hold it had been renewed and that the trial court should be affirmed for the reasons as hereinafter appear.

On March 9, 1968, Williams was driving his 1967 Ford when it collided with a vehicle driven by Ralph Masterson which in turn collided with a vehicle driven by Jimmy Dale Landers, as a consequence of which collision various suits were brought against Williams for damages. Notice of loss was sent to Ben O. Logue Agency, general agent for Consolidated, but Logue denied that Williams was insured by Consolidated at the time of the accident. Williams then filed these two bills for declaratory judgment seeking decrees that the Consolidated policy was in full force and effect on the date of the accident.

The declarations of the policy contained the following provision:

"This policy shall expire as shown in Item 1 of the Declarations, *except that it may be continued in force for successive policy periods by the payment of the required renewal premium in advance of each such period.* Each such policy period shall be for the declared number of calendar months, and each shall begin and expire at 12:01 AM Standard Time at the address of the named insured. The premium shown is for the stated policy period. If renewed, the successive policy periods shall be 12 calendar months." [Emphasis supplied.]

Item 1 shows the expiration date to be March 2, 1968.

The insured, Sanders Buckner Williams, had originally obtained an automobile liability policy with Morrison Assurance Company through Lee Roy Wiginton Insurance Agency at Hamilton, Alabama. When the Morrison Company went out of business and cancelled its policies in December 1967, Ben Logue Agency at Memphis, Tennessee, as agent for Consolidated Underwriters of Kansas City, wired Wiginton that it would like to take over all of Morrison's policies which he had in force. Consolidated policies were then issued to all of Morrison's insureds through Wiginton for the unexpired terms of the Morrison policies in consideration of the return premiums refunded by Morrison.

In December of 1967 Wiginton remitted Williams' refund from Morrison to Logue to pay the premium for the Consolidated policy. Upon receiving from Logue the Consolidated policy here at issue, Wiginton stamped it "Lee Roy Wiginton Insurance Agency" and mailed it to Williams. The policy period was December 30, 1967 to March 2, 1968.

On February 20, 1968, Williams' wife went to the office of the Lee Roy Wiginton Insurance Agency, apparently in response to a letter from Wiginton's office, paid $40, and received a receipt signed "Wiginton Insurance Agency, by June Parrish." The receipt stated the payment was "For Liability Insurance." No written application for a renewal of the Consolidated policy was made at that time, nor does it appear that any written renewal application was ever made to Consolidated. Without objection, Wiginton testified that he assumed that the $40 was paid to his agency for a renewal of the Consolidated policy, though Wiginton did not recall Williams ever stating to him directly that he wanted his insurance renewed with Consolidated. There was no evidence that the offices of either the Ben O. Logue Agency or Consolidated received the $40 payment.

Prior to February 20, 1968, Wiginton received an "EXPIRATION LIST" from the Logue Agency which contained the name, policy number, and expiration date of the several Consolidated policies which had been placed through Wiginton including the Williams' policy. The expiration date given for Williams' policy was March 30, 1968. At the bottom of the "LIST" the following language appeared:

"THIS LIST IS SUBMITTED AS A COURTESY ONLY, AND WE DO NOT ATTEST TO ITS ACCURACY OR COMPLETENESS.

"RENEWAL QUOTATIONS ON REQUEST"

Wiginton testified that he read this language but nevertheless relied upon the expiration dates appearing on the list, as was his custom at that time. Expiration lists were sent out by Logue whenever policy expirations were coming up.

Wiginton testified that he solicited applications for insurance and submitted them to several different insurance companies, frequently through general agents such as Ben O. Logue Agency. Wiginton said he never dealt directly with Consolidated but only through Logue and that he was not a licensed agent of Logue nor of Consolidated. He testified that he was a broker, and that he had no authority to bind coverage orally or by endorsement. Wiginton subsequently solicited applications for Consolidated policies unrelated to the Morrison policies. He sent these applications to Logue, which presumably issued the policies and sent him expiration lists from time to time.

William Langford, regional claims manager for Consolidated, testified that though Logue Agency was a general agent for Consolidated, its actual authority went beyond that of the usual general agent; Logue had authority to issue policies without the approval of Consolidated, to handle claims, and to renew policies. Logue had the responsibility to Consolidated to keep up with issuance of policies, expirations and renewals.

On this appeal, Consolidated contends that the trial court's decree holding the policy in effect on March 9, 1968, ignores the expiration date of March 2, 1968, shown on the face of the policy. Consolidated maintains that the payment of $40 to Wiginton was not effective to renew the policy because the money never found its way to the offices of either Consolidated or Logue Agency and Wiginton was not an agent of Consolidated or Logue. (If he was anyone's agent, appellant says, he was the insured's.) Appellant also seems to argue that even if Wiginton were an agent for Consolidated or Logue, the policy had not been renewed because the money was never clearly earmarked for Consolidated and Williams manifestation of intent to renew

was too ambiguous and equivocal to create a contract.

Appellee Williams urges two theories in support of the trial court's decree: (1) that the erroneous date on the "EXPIRATION LIST" estopped Consolidated from denying coverage prior to March 30, 1968; and (2) that the $40 payment to Wiginton renewed the policy. Since we agree with appellee's second theory, we offer no opinion as to the first.

■ This case was tried before the trial judge and we are, of course, bound to follow our rule that where the trial court hears the evidence ore tenus, we indulge in strong presumptions in favor of the correctness of his decision and such presumptions can only be overcome when it is apparent from the evidence that the judge's decision was palpably wrong and unjust. State v. City Wholesale Grocery Co., 283 Ala. 426, 218 So.2d 140 (1969); Patterson v. Brooks, 285 Ala. 349, 232 So.2d 598 (1970).

■ From the facts and legitimate inferences therefrom, we think the trial court could have found: that Ben O. Logue Agency was a general agent for Consolidated Underwriters Insurance Company, soliciting business, issuing and renewing policies without Consolidated's approval, and handling claims; that the general nature of this business which Consolidated had committed to Logue was such as would necessitate the appointment of subagents to properly carry it out, and that, therefore, Consolidated could be bound by acts of subagents authorized by the general agent Logue; that Logue had given Wiginton express or, at least, apparent authority to solicit insurance, to collect premiums on its behalf, and to deliver its policies; that the $40 payment was for a renewal of Williams' policy with Consolidated; that the provision in the policy concerning renewal is clear and unambiguous and constituted a continuing offer to insure on the part of Consolidated; that Williams' payment of the renewal premium in advance constituted an acceptance of that offer and created a binding contract of insurance which was effective on the date of the accident, March 9, 1968.

■ If the renewal provision is construed to be ambiguous, it would be subject to the rule that ambiguous language in an insurance policy is to be construed in favor of the insured. Safeco Insurance Company of America v. Banks, 275 Ala. 119, 152 So.2d 666 (1963). And, the construction would still be in insured's favor.

■ In reaching our conclusion, we have treated Wiginton's testimony that he was not an agent as inconclusive of that issue. Such testimony is merely to be considered with other evidence in determining whether an agency relationship exists. Roberts & Son v. Williams, 198 Ala. 290, 292, 73 So. 502 (1916).

Consolidated has contended that Wiginton had no authority to act for it nor for Logue, its general agent, and therefore the payment of the $40 does not effect a renewal of the policy.

We have found numerous authorities containing language supporting the general proposition, found in our case of Finch v. Life & Casualty Ins. Co. of Tennessee, 253 Ala. 408, 411, 45 So.2d 16 (1950), to the effect that the power of the general agent of an insurer to appoint subagents to act with authority for the agent and the principal *depends on the general nature of the agency and whether it is such as to require the services of subagents to carry on its business.* If so, such business can be conducted by subagents since it is understood that subagents being necessary for these purposes, the principal is bound to have known that subagents would be appointed for such purposes.

■ We quote from Appleman, Insurance Law & Practice, § 8701:

"* * * As affects insurance companies, the law of principal and agent is

liberally interpreted in favor of the insured, so that an insurer is bound by the acts of subordinate agents, not only in the scope of their actual authority, but within the scope of their apparent authority. * * *

"The principle of law that, where an authority is conferred requiring skill or discretion on the part of an agent and no power of substitution is given, the agent must act in person and the principal would not be bound by the act of a subagent, has no application to the responsibility of an accident insurance company for the act of its subagent. * * *

"* * * Where duly authorized insurance agents employ subagents to solicit insurance, and perform other acts in relation thereto, the acts of such subagents within the scope of such delegated authority are in effect the acts of the agent. This may mean, in turn, that they are the acts of the insurer. In the event of incompetency, therefore, either the agent or the company must bear the resultant loss."

To like effect we find the following in 43 Am.Jur.2d, Insurance, § 160, pp. 217, 218, and § 161, p. 219:

"§ 160. * * *

"* * * As to a general agent of an insurance company it has been said that the maxim "delegatus non potest delegare" does not apply, since the business of an insurance agent, either in issuing policies or soliciting insurance, is not of such a discretionary or personal nature that it cannot be delegated. Furthermore, it is a matter of common knowledge that the insurance business is carried on by agents largely through subordinates, that it cannot properly be carried on in any other way, and that therefore a general agent may, as a matter of implied consent, appoint subagents and subordinates whose statements, acts, knowledge, or receipt of notice within the ordinary course of business will bind the company. * * *"

"§ 161. * * *

"As a consequence of the delegation of his authority by an insurance agent within the scope of his agency to subagents, clerks, or assistants, the insurer becomes bound by their acts to the same extent as by the acts of the agent himself. It has been said that the general rule is that an insurance company which has appointed an agent with general authority to act in its behalf throughout a considerable territory is charged with knowledge of the reasonable need of such agent to appoint assistants or subagents to solicit insurance within the assigned area, and where an assistant or subagent acts within the scope of his appointment, his acts bind the company to the same extent as if his appointment came directly from the company. * * *"

We think Consolidated's argument overlooks these authorities and the numerous cases which have held an insurer liable for the acts of subagents.

In Rommel v. New Brunswick Fire Ins. Co., 214 Minn. 251, 8 N.W.2d 28 (1943), the insurer denied liability on a fire insurance contract. There, P. F. Kelly, acting as agent for E. H. Schacht Agency of Rochester and Red Wing, Minnesota, which was local agent for R. M. Neely Company of St. Paul, which was in turn general agent of the insurer for the state, had solicited an application for fire insurance from the insured, assuring her that coverage commenced at noon on the date of application. Whether this assurance constituted an oral contract binding defendant insurer depended upon whether Kelly were an agent for the insurer and acting within the scope of his authority. The court held that, "* * * the generally accepted rule is that Schacht as such agent had implied authority to appoint such clerks, assistants, and subagents as were deemed necessary for the proper and effi-

cient transaction of his own and defendant's business. * * *"

In Harding v. Norwich Union Fire Ins. Soc., 10 S.D. 64, 71 N.W. 755 (1897), the insured sought recovery on a fire insurance policy for the loss of certain personal property. The policy contained a clause voiding it in the event that the insured property was or became encumbered by a mortgage. There was evidence that the insured had informed the soliciting agent, one Kimball, at the time he applied for the insurance that the subject property was mortgaged. Kimball was an employee of L. W. Stillwell, general agent at Deadwood, South Dakota, for the defendant insurer. Kimball had an arrangement with Stillwell whereby he solicited applications for insurance with defendant insurer, delivered policies, and collected premiums. This was unknown to the insurer. Liability depended upon whether notice of the mortgage to Kimball was notice to the insurer, or, put differently, whether Stillwell was authorized to employ a solicitor with authority to waive the condition of the policy concerning encumbrances. The court held that whether Stillwell had such authority was properly a question for the jury, saying:

"* * * 'An agent has authority to do everything necessary or proper and usual, in the ordinary course of business, for effecting the purpose of his agency.' * * * the employment of persons to solicit insurance, deliver policies, and collect premiums, is necessary, proper, and usual in the ordinary course of the insurance business. It is contemplated by the appointment of recording agents, and therefore they have actual authority to employ persons for those purposes. * * *"

Globe & Rutgers Fire Ins. Co. of New York v. Eureka Sawmill Co., 227 Ala. 667, 151 So. 827 (1934), also supports our view.

There an insurer attempted to repudiate a fire insurance contract entered into by the son of the insurer's general agent, and we responded:

"* * * The father [general agent] represented many companies, and did a very large and extensive insurance business—in the neighborhood of a quarter of a million of dollars in premiums per year. It was open to the jury to find that it was necessary that he should have assistants or subagents. And it has been held, as a general principle, that, where subagents are necessary to the proper transaction and carrying on of the business committed to the agent, the latter has implied authority to appoint subagents. * * *"

Here, there was evidence that the general agent, Logue, carried on a large and extensive insurance business, and we think the trial court could find from the evidence that subagents were necessary to a proper transaction of the business committed to Logue. See also, Insurance Co. of North America v. Thornton, 130 Ala. 222, 30 So. 614, 55 L.R.A. 547, 89 Am.St. Rep. 30 (1901); Westchester Fire Ins. Co. of New York v. Green, 223 Ala. 121, 134 So. 881 (1931).

It is no answer to say that the insurer Consolidated did not expressly authorize Logue to delegate any of its authority to Wiginton.[1] The Supreme Court of Appeals of Virginia answered such a contention as early as 1895 in Goode v. Georgia Home Ins. Co., 92 Va. 392, 23 S.E. 744, 745:

"It is no sufficient answer to this view to say that the insurers did not authorize their agents to delegate their authority to others. It may be that they did not do so expressly [delegate this authority], but they appointed agents whom they know, or ought to have known, would,

---

1. The record is silent as to whether Consolidated did, or did not, authorize Logue to delegate any of its authority and as to whether Consolidated knew of Logue's course of business with Wiginton.

according to the usage or the necessities of the business, engage the services of others in doing the work intrusted to them; and, having this knowledge, they will be held to have impliedly authorized their agents to do what was usual or necessary in the business."

It is likewise no answer to say that Wiginton was only the agent for the insured and payment of the $40 was not payment until received by Logue—since we consider the evidence to be such that the trial court could find that Wiginton was a subagent, as we have heretofore pointed out. We quote from 45 C.J.S. Insurance § 629, p. 490, as a sufficient answer to this theory:

"\* \* \* The mere fact that a policyholder placed money in the hands of his own agent, with instructions to pay the premium before the day of forfeiture, will not amount to a payment so as to avoid the forfeiture if the agent fails to follow such instructions, but if the agent is also regarded as that of insurer for the purpose of transmitting premiums payment to him may be sufficient."

We have already indicated that we consider the renewal provision of the policy constituted a continuing offer to insure which was accepted by the insured. We have not found a case with a renewal clause exactly in point. However, other courts have interpreted similar clauses.

In Frank v. Metropolitan Life Ins. Co., 227 Wis. 613, 277 N.W. 643, 645 (1938), the insurer denied liability under an accident policy, claiming that its agent's acceptance of a renewal premium from the insured was not alone effective to renew the insurance contract in the absence of affirmative consent to renew on the part of the insurer. The Supreme Court of Wisconsin held that the following clause, inter alia, constituted a continuing offer to insure:

"\* \* \* This policy may, with the consent of the company, \* \* \* be periodically renewed upon each successive expiration \* \* \* upon the payment of the premium herein stated, as the premium for such successive renewal.' \* \* \*"

The insured's timely payment of the renewal premium, prior to any revocation of the offer to insure, was held to be an acceptance of insurer's offer, creating a contract. This interpretation of the policy prevailed, it should be noted, despite the phrase, "with the consent of the company" —language having no equivalent in the policy here at issue.

In Harwell v. Mutual Ben. Health & Acci. Ass'n, 207 S.C. 150, 35 S.E.2d 160, 162 (1945), the pertinent clauses:

"\* \* \* '\* \* \* After the first year's premium has been paid, each year's renewal premium paid in advance on this policy shall add One Hundred Dollars to the death benefit until the same amounts to Two Thousand ($2000.-00) Dollars.' "

and

"\* \* \* '\* \* \* [T]he payments [sic] in advance of Five ($5.00) Dollars annually thereafter, beginning with Mar. 1, 1935, is required to keep this policy in *continuous* effect. \* \* \*' "

were construed even more strongly against the insurer and held to constitute the automobile accident policy there at issue "a continuous non-cancellable contract." It should be noted that this interpretation was reached despite the presence in the policy of a provision that acceptance of any renewal premium should be optional with the insurer.

We do not need to go so far as the *Harwell* case. We have already indicated that we consider the renewal clause, in the case at bar, constituted a continuing offer to insure on the part of Consolidated which was accepted by the insured's payment to Wiginton Agency, its subagent.

A final matter remains to be disposed of, the motion of appellant to strike

a portion of appellee's brief which has to do with matters dehors the record. This motion is granted.

The decrees are due to be affirmed.

Affirmed.

LIVINGSTON, C. J., and SIMPSON, COLEMAN and McCALL, JJ., concur.