COBB, Chief Justice
(dissenting).
I concur with Justice Lyons’s assessment that, because of Citizens’ general contacts with this State, personal jurisdiction does exist under a general-contacts analysis.
I write to add that personal jurisdiction would also exist under a specific-contacts analysis. That is, regardless of whether it had sufficient general contacts with the State to be subject to personal jurisdiction, Citizens’ specific contacts with Garnett are sufficient to give rise to personal jurisdiction over Garnett’s action.
At the time it entered into an insurance contract with Garnett, Citizens knew that it was undertaking a duty not only to pay money upon the occurrence of certain contingencies related to Garnett’s Florida real property, but also to act in good faith and to deal fairly with Garnett. Citizens also knew, at the time it entered into the contract, that the violation of this duty of good faith and fair dealing, and any related tortious conduct, would give rise to damages in tort personal to Garnett, who was an Alabama resident. See Chavers v. National Sec. Fire & Cas. Co., 405 So.2d 1 (Ala.1981).
In fact, Garnett asserts tort claims in this case seeking damages not for damage to the insured property in Florida, but impersonal harm arising from alleged bad-faith investigation of her claim and denial of coverage, misrepresentation, suppression, and conspiracy on the part of Citizens.
In particular, the record reflects that the letter from Citizens denying coverage, which is alleged to have been sent in bad faith and to have contained misrepresentations or to have been a vehicle for fraud and suppression, was sent to the insured, Garnett, in Alabama. Thus, the parties’ evidentiary submissions establish that the allegations of bad faith, fraudulent misrepresentation, and suppression arise from Citizens’ own deliberate and purposeful dealings and communications with Garnett in Alabama — not from any unilateral act on Garnett’s part.[8] In addition, Garnett alleges that Citizens conspired through communications with its Alabama-based adjuster to conduct a flawed investigation of Garnett’s claim that would result in the denial of coverage.
This is not a case where, as the majority hypothesizes in footnote 6 of its opinion, an insured has procured a contract in one state and then unilaterally moves its primary residence to another. In fact, this case is not even akin to a products-liability case in which a person purchases a defective product in one state and then unilaterally moves the product to the state of the purchaser’s residence. The alleged tor- *519 tious conduct here occurred not when the insurance contract at issue was created (perhaps in Florida),[9] but when the insurer investigated and then denied the insured’s claim. At that time, the insurer reasonably ought to have anticipated that the direct consequences of its actions would have been felt by the insured in Alabama. See Duke v. Young 496 So.2d 37, 39 (Ala.1986) (holding that a person subjects himself to personal jurisdiction in a particular state if he reasonably ought to anticipate that someone residing in that state would be the recipient of the direct consequences of his actions).
The majority also poses the following hypothetical in footnote 6: “To avoid being haled into court in another state, should a Florida insurance company in the sole business of selling casualty insurance on Florida real property through Florida-based agents be required to insist that prospective policyholders go through the motion of renting a post-office box somewhere in the state of Florida for the purpose of receiving notices from that company?” I agree that the answer to that question is “no.” Several simple solutions, however, exist for the insurance company in such a situation. For example, if the insurer truly is not doing insurance business outside the state of Florida so that it would be subject to the insurance regulations of other states, I see no reason why the insurer would not be able to insist upon a Florida venue provision in the insurance contract. Further, Citizens is a creature of Florida statutory law. Assuming Citizens is not subjecting itself to regulation in other states by the extent of its insurance business there, I see no reason why the Florida legislature could not have provided that, as a condition of obtaining insurance from Citizens, each insured must agree to pursue any legal action against Citizens in Florida.
In conclusion, “[t]he fundamental question is, did the defendant act in such a manner that he reasonably ought to anticipate the direct conseqtiences of his actions to be felt by another person residing in another state? ” Duke v. Young 496 So.2d at 39. Assuming the uncontradicted allegations in the complaint to be true and considering the evidentiary submissions of the parties as they pertain to allegations that are in dispute, see Ex parte Safeway Ins. Co. of Alabama, Inc., 990 So.2d 344, 349-50 (Ala.2008), I believe that, in this case, the answer to that question would have to be “yes” — even if one looks solely at the specific contacts between Citizens and Garnett that give rise to this action. Therefore, I believe that personal jurisdiction exists, even under a specific-contacts analysis.
I respectfully dissent.

. I express no opinion as to whether the evidence supports Garnett's bad-faith, fraud, and suppression claims, or as to whether the fraud and suppression claims as currently stated are sufficient under Rule 9(b), Ala. R. Civ. P. I disagree with the reasoning underlying the majority’s statement that "[t]he pen-dency of the present case indicates that Gar-nett did not rely on any [allegedly fraudulent] representations and related denial of coverage.” 15 So.3d at 513 n. 2. The filing of a fraud action does not negate the possibility that reliance existed before the discovery of the alleged fraud. Furthermore, given the current stage of the litigation and the fact that the parties did not present evidence to this Court on the issue of reliance, I believe it is premature to opine on whether Garnett relied on any of Citizens' allegedly fraudulent representations.

. The record indicates that Garnett’s insurance contract with Citizens was renewed on several occasions before Hurricane Ivan damaged Garnett's home, but Citizens did not present sufficient evidence from which to determine whether Florida is the locus of the renewal contracts. See Consolidated Underwriters Ins. Co. v. Landers, 285 Ala. 677, 235 So.2d 818 (1970) (recognizing that a renewal provision in an insurance policy constituted a continuing offer to insure and that payment of the renewal premium in advance constituted acceptance of that offer and created a binding contract of insurance). Even if I were to assume that the locus of the insurance contract at issue is Florida, that assumption would not change my analysis as to whether personal jurisdiction exists, because Citizens reasonably ought to have anticipated that tor-tious activity related to the investigation and denial of the claim would cause injury to Garnett in Alabama.